STATE v. DAVID FOYE, JR., AND CHARLES HERBERT WILLIAMS.

(Filed 24 May, 1961.)

**1. Homicide § 20: Criminal Law § 101—**
Evidence that the body of a person was found with marks of violence upon it, or under circumstances indicating that such person came to his death by violent means, is proof of the *corpus delicti aliunde* the confession of defendant, so that such evidence, together with evidence that defendant entered into an agreement with another to rob the deceased and admitted that he met his co-conspirator and was present at the time of the commission of the murder in the perpetration of the robbery, is sufficient to be submitted to the jury on the question of defendant's guilt of murder in the first degree.

**2. Criminal Law 61½—**
Testimony as to the result of a lie detector test is incompetent in this State to prove the guilt or innocence of a defendant charged with crime.

**3. Same—**
Where the testimony of a co-conspirator has implicated the defendant in the commission of the crime charged, the admission in evidence of the results of a lie detector test submitted to by the co-conspirator, which thus tends indirectly to establish the guilt of defendant, is incompetent and highly prejudicial.

**4. Criminal Law § 162—**
Where incompetent evidence of such highly prejudicial nature that its effect cannot be erased from the minds of the jurors is admitted, the error in its admission cannot be cured by instructions of the court that such evidence should not be considered against the defendant.

**5. Criminal Law § 106—**
An instruction upon defendant's evidence of alibi, that if the jury were satisfied from the evidence that defendant was not at the place when the crime charged was committed, to return a verdict of not guilty, is erroneous, the correct rule being that defendant's evidence of an alibi should be considered only in determining whether the evidence for the

State is sufficient to satisfy the jury beyond a reasonable doubt of the fact of guilt.

**6. Criminal Law § 118:   Homicide § 30—**

A verdict of guilty of murder in the first degree with recommendation of mercy is not in accord with law, the proper verdict being, in such instance, guilty of murder in the first degree with recommendation of imprisonment for life in the State prison.

APPEAL by defendant Charles Herbert Williams from *Cowper, J.,* at January Term 1961, of CRAVEN.

Criminal prosecution upon a bill of indictment charging "that David Foye, Jr., and Charles Herbert Williams, late of Craven County, on the 29th day of October, A.D., 1960, with force and arms, at and in the said county, feloniously, willfully, and of his malice aforethought, did kill and murder Garfield Henderson, contrary to the form and the statute in such case made and provided, and against the peace and dignity of the State."

Upon arraignment the said Charles Herbert Williams "saith that he is not guilty of the felony and murder as charged in the bill of indictment." And so did defendant Foye.

A true bill of indictment having been returned against each of the defendants at the November Term 1960, and it appearing to the court that each of them is insolvent and is without means to employ counsel to represent him, the court ordered that Henry A. Grady, Jr., Esq., an attorney of New Bern, North Carolina, be appointed as counsel to represent defendant Foye, and that John W. Beaman, Esq., also an attorney of New Bern, be appointed as counsel to represent the defendant Williams.

The case on appeal shows that defendants were tried upon theory of homicide committed allegedly in the perpetration of robbery. And that the defendant David Foye, Jr., confessed to having killed the said Garfield Henderson with an ice pick, implicated the defendant Williams as a party to the crime of robbery of the deceased.

Upon the trial in Superior Court both the State and the defendants offered evidence upon which, under the charge of the court, the case was submitted to the jury.

Verdict: As to each defendant "Guilty of murder in the first degree with recommendation of mercy."

Judgment: As to each defendant that he be "confined in the State Prison at Raleigh for the term of his natural life."

To the above verdict and judgment the defendant Charles Herbert Williams gave notice of appeal and appeals to the Supreme Court, and assigns error.

Thereupon John W. Beaman, upon his own motion at January Term 1961, for personal reasons, was permitted to withdraw from further appearance on behalf of this defendant. And Kennedy W. Ward, attorney of the New Bern Bar, was appointed by the court to represent defendant Charles Herbert Williams in preparing the appeal to the Supreme Court of North Carolina, and to do all and everything necessary to protect the rights of the said defendant.

Moreover, in accordance with the statute G.S. 15-181 defendant was permitted to appeal *in forma pauperis,* and the necessary cost of preparing the appeal, and the appeal were provided at the county's expense.

*Attorney General Bruton, Assistant Attorney General G. A. Jones, Jr., for the State.*
*Kennedy W. Ward for defendant appellant.*

WINBORNE, C.J. The evidence in the present case, when considered in the light most favorable to the State, is sufficient to warrant submitting the case to the jury and to support the verdict and judgment. Where the dead body of a person is found with marks of violence upon it or other circumstances that indicate that the deceased came to his death by violent means, proof of such fact, independent of defendant's confession, establishes *corpus delicti.* The defendant Williams, by his confession, admitted meeting defendant Foye, and being present at the time the murder was committed. He is also shown to have entered into an agreement with Foye to rob the deceased. Hence the assignment of error directed to the court's refusal to allow defendant's motion for judgment as in case of nonsuit (G.S. 15-173) is overruled. *S. v. Downey,* 253 N.C. 348, 117 S.E. 2d 39; *S. v. Haddock,* 254 N.C. 162, 118 S.E. 2d 411.

However, upon a thorough examination of the record we are of the opinion that the defendant is entitled to a new trial on two grounds: 1. The first error relates to the admission of certain evidence concerning a lie detector test given both defendants. In this connection Deputy Sheriff Edwards, under cross-examination by counsel for the defendant Foye testified as follows: "Q. Now, did you take David Foye to Raleigh last week to give him a lie detector test? A. Yes, sir.

"Q. Did you talk with David on your way to Raleigh? A. No, sir, didn't talk too much with David, and we did not have any conversation on the way to Raleigh.

"Q. Was he given a lie detector test? A. Yes, sir.

STATE *v.* FOYE.

"Q. Were you where you could hear what was said on the questioning while he was being given the test? A. Yes, sir.

"Q. Who operated the machine in Raleigh? A. Mr. John Boyd.

"Q. He is a recognized expert in connection with operating a lie detector machine, is he not? A. Yes, sir.

"Q. Did David Foye, while then and there being given the test make substantially the same statements to Mr. Boyd that you testified to here this morning? A. Yes, sir.

"Q. Would you tell the court and the jury the result of that test? A. I can tell you what Mr. Boyd told me; he said that David Foye had told the truth.

"Q. And that the machine so indicated? A. Yes, sir."

Upon direct examination by the solicitor, Deputy Sheriff Edwards testified as follows concerning the lie detector test:

"Q. Who else, if anyone, went to Raleigh with you? A. Myself, Deputy Sheriff Taylor, FBI Agent John Edwards.

"Q. Well, did the defendant Charles Williams also go? A. Yes, sir, Charles Williams went, and David Foye.

"Q. And was he likewise interviewed by Mr. Boyd? A. Yes, sir."

Thereafter, defendant Foye, testifying in his own behalf brought out the following evidence:

"Q. Now, you were carried to Raleigh last week? A. Yes, sir.

"Q. They sat you down in this contraption up there that looked like one of Rube Goldberg's inventions. A. Yes, sir.

"Q. When you took your seat at that lie detector machine, were you questioned by Mr. Boyd, the operator of the machine? A. Yes, sir.

"Q. Did he ask you the same questions in substance that I've asked you here on the stand? A. Yes, sir.

"Q. Did you give him substantially the same answers that you have given me? A. Yes, sir."

In each instance the trial judge instructed the jury to apply the evidence only to the defendant Foye and renewed the admonition concerning the use of the lie detector evidence as to the defendant Williams in the final charge. These statements with reference to the lie detector test as introduced into this case were highly prejudicial to the defendant Williams and in our opinion constituted prejudicial error. It is of such a character that it cannot be purged of its harmful effect by an admonition to the jury.

The courts of this country, in the absence of stipulation, have uniformly rejected the results of lie detector tests when offered in evidence for the guilt or innocence of one accused of a crime, whether the accused or the prosecution seek its introduction. See 23 A.L.R. 2d 1306 and 1960 A.L.R. 2d Supplement Service p. 1998.

The reason most commonly assigned for the exclusion of such evidence is the contention that the lie detector has not yet attained scientific acceptance as a reliable and accurate means of ascertaining truth or deception. *Tyler v. United States,* 90 App. D.C. 2, 193 F. 2d 24, cert. den. 343 U.S. 908; *Henderson v. State,* 94 Okl. Crim. 45, 230 P. 2d 495, cert. den. 342 U.S. 898.

The courts have also ruled inadmissible testimony in regard to lie detector tests on various other grounds: (1) On the ground that no expert evidence had been introduced in the particular case showing a general scientific recognition of the efficacy of such tests. *People v. Becker,* 300 Mich. 562, 2 N.W. 2d 503; *People v. Forte,* 279 N.Y. 204, 18 N.E. 2d 31.

(2) On the ground that the admission of lie detector tests would distract the jury. *S. v. Cole,* 354 Mo. 181, 188 S.W. 2d 43.

(3) On the ground that it would permit the defendant to have extrajudicial tests made without the necessity of submitting to similar tests by the prosecution. *S. v. Bohner,* 210 Wisc. 651, 246 N.W. 314.

(4) On the ground that the lie detecting machine could not be cross-examined. *S. v. Lowry,* 163 Kan. 622, 185 P. 2d 147; *Boeche v. S.,* 151 Neb. 368, 37 N.W. 2d 593; *S. v. Bohner, supra.*

Furthermore, these authorities show that the lie detector tests prove correct in their diagnosis in about 75% of the instances used. In other words, such factors as mental tension, nervousness, psychological abnormalities, mental abnormalities, unresponsiveness in a lying or guilty subject account for 25% of the failure in the use of the lie detector. See Inbau, LIE DETECTION AND CRIMINAL INTERROGATION, 2nd Ed. (1948).

Hence, we are of opinion that the foregoing enumerated difficulties alone in conjunction with the lie detector use presents obstacles to its acceptability as an instrument of evidence in the trial of criminal cases, notwithstanding its recognized utility in the field of discovery and investigation, for uncovering clues and obtaining confessions. This conclusion is in line with the weight of authority repudiating the lie detector as an instrument of evidence in the trial of criminal cases.

One of the recent cases stating a reason for the denial of the use of lie detector results in evidence is that of *Lee v. Commonwealth,* 200 Va. 233, 105 S.E. 2d 152, wherein it is said: "While there are several valid reasons for the exclusion of the evidence showing the result of the test in this instance, suffice it to say that such tests generally have not as yet been proved scientifically reliable * * * ." See also *S. v. Hollywood* (Cal.), 358 P. 2d 437.

These devices are unlike the science of handwriting, fingerprinting,

and X-Ray, which reflect demonstrative physical facts that require no complicated interpretation predicated upon the hazards of unknown individual emotional differences, which may and oftentimes do result in erroneous conclusions. See Inbau, *supra.*

One exception to the majority rule is *People v. Kenny,* 167 Misc. 51, 3 N.Y.S. 2d 348 (N. Y. Queens C. C. Ct. 1938). There a lower court admitted a lie detector test into evidence. However, in that case the defendant was acquitted and there was no opportunity for a review of the trial court's ruling. In a later case, *People v. Forte, supra,* the New York Court of Appeals made the *Kenny* case questionable precedent. The Court said: "We cannot take judicial notice that this instrument is, or is not, effective for the purpose of determining the truth * * * The record is devoid of evidence tending to show a general scientific recognition that the Pathometer possesses efficiency * * * ."

Moreover, the parties should not be permitted to introduce lie detector results into evidence by indirection. *People v. Aragon,* 154 Cal. App. 2d 646, 316 P. 2d 370; *People v. Wochnick,* 98 Cal. App. 2d 124, 219 P. 2d 70; *Leeks v. State,* 95 Okl. Cr. App. 326, 245 P. 2d 764.

The trial court in the present case, by allowing the lie detector evidence through the examination of Deputy Sheriff Edwards and defendant Foye as set out above, did indirectly what would be highly improper if done directly. It was designed to leave the inference that the defendant Foye was telling the truth about the whole matter and amounted to informing the jury of the results of the lie detector tests.

Therefore, despite the instructions of the court, the conclusion is that the evidence of the results of the lie detector test was indelibly implanted in the minds of the jurors and had a prejudicial effect.

II. The second error relates to the court's charge upon the question of alibi. The court charged the jury as follows: "I want to define to you alibi. The definition of alibi, which literally means elsewhere, not only goes to the essence of the guilt of the accused person, but it traverses one of the material ingredients in the bill of indictment, namely, that the prisoner did then and there commit the particular act charged. It is not an affirmative or stringent definition and an alibi upon the idea that the accused was elsewhere at the date of the act does, of course, thoroughly established precludes the possibility of guilt. It is enough if the evidence adduced in support of it viewed in connection with all the testimony in the case created such a probability of its truth as to raise a reasonable doubt of the defendant's guilt.

"After a consideration of all the evidence if the jury entertains a reasonable doubt of the defendant's presence at and participation in the crime they should return a verdict of not guilty. The fact that a prisoner relies upon alibi which means elsewhere and could not have

been at the place of the crime when it was committed if he was elsewhere at the time is that he is not required to satisfy you of the alibi beyond a reasonable doubt, but if you ladies and gentlemen are satisfied from the evidence that he was not at the place when the crime charged against him was committed and as charged in the bill of indictment, then a verdict of not guilty should be returned."

This instruction fails to make clear who has the burden of proof, the defendant or the State, when the former relies on alibi as a defense. In *S. v. Minton,* 234 N.C. 716, 68 S.E. 2d 844, *Ervin, J.,* said: "An accused, who relies on an alibi, does not have the burden of proving it. It is incumbent upon the State to satisfy the jury beyond a reasonable doubt on the whole evidence that such accused is guilty. If the evidence of alibi, in connection with all the other testimony in the case, leaves the jury with a reasonable doubt of guilt of the accused, the State fails to carry the burden of proof imposed upon it by law, and the accused is entitled to acquittal." This being true, the charge as to alibi is not in accord with the approved precedents. *S. v. Sheffield,* 206 N.C. 374, 174 S.E. 105; *S. v. Bridgers,* 233 N.C. 577, 64 S.E. 2d 867; *S. v Minton, supra; S v. Stone,* 241 N.C. 294, 84 S.E. 2d 923.

Finally, while there is in the record no exception in respect thereto, it is appropriate to call attention to the fact that the verdict of the jury is not in keeping with the language of the statute G.S. 14-17. There is no such crime in this State as "'murder in the first degree with recommendation of mercy." The correct expression is "recommendation of imprisonment for life in the State's prison." In the instant case the court correctly charged the jury, but the verdict as recorded is "recommendation of mercy." See *S. v. Denny,* 249 N.C. 113, 105 S.E. 2d 446. This error may not occur upon another trial.

For reasons stated let there be a

New trial.