### STATE v. BOBBY ROSS.

(Filed 17 April 1968.)

**1. Burglary and Unlawful Breakings § 5;    Assault and Battery § 14—**

Evidence in this case is held sufficient to go to the jury on the issues of defendant's guilt of first degree burglary and assault with a deadly weapon with intent to kill, inflicting serious bodily injuries not resulting in death.

**2. Trial § 13—**

The trial court has the discretionary power to grant or refuse a request

for a jury view of the scene of the crime, and the court's refusal to permit a jury view of the scene of a crime committed thirteen months previously is not an abuse of that discretion.

**3. Criminal Law § 75;  Constitutional Law § 33—**

Defendant is not prejudiced by the failure of police officers to give him the constitutional warnings set forth in *Miranda v. Arizona,* 384 U.S. 436, where no evidence obtained as a result of interrogation was used against him at the trial.

**4. Criminal Law § 146—**

Where the record proper contains inconsistent and contradictory statements as to the judgment pronounced, the Supreme Court, pursuant to its inherent power and duty to make its records speak the truth, and acting under its supervisory power over the lower courts, will remand the cause to the Superior Court for a proper judgment.

APPEAL by defendant from *Martin, S.J.,* July 1967 Session of CLEVELAND.

Criminal prosecution on an indictment containing two counts: The first count charges first degree burglary in the dwelling house of Oscar Patterson, Sr., and Daisy R. Patterson, his wife, in Shelby. The second count charges an assault upon Oscar Patterson, Sr., with a deadly weapon, to wit, a knife, with the felonious intent to kill, inflicting serious bodily injuries not resulting in death, consisting of cuts and injuries about his face and body causing permanent scars thereon.

Defendant, by his court-appointed counsel who is counsel of record here, entered a plea of not guilty. The jury returned a verdict of guilty as charged on both counts in the indictment with a recommendation of life imprisonment upon the first count charging burglary in the first degree. When the verdict was returned, defendant's counsel asked that the jury be polled. The jury was polled, and each individual on the jury said that he found the defendant guilty as charged on both counts in the indictment with a recommendation of life imprisonment as to the first count charging burglary in the first degree, and that he still assented to that verdict.

On the first count in the indictment the court sentenced defendant to imprisonment for life, and on the second count in the indictment the court according to page 4 of the record sentenced defendant to imprisonment for not less than nine years nor more than ten years, this sentence to commence at the expiration of the sentence heretofore passed against him of life imprisonment for burglary in the first degree. The record before us on page 52 shows that the court sentenced the defendant on the first count in the indictment charging burglary in the first degree to imprisonment for life, and on the

STATE *v.* ROSS.

second count the court sentenced defendant to imprisonment for five years, which sentence was to begin at the expiration of the sentence passed on the first count of life imprisonment for burglary in the first degree. From these judgments, defendant appeals.

*Attorney General T. W. Bruton and Deputy Attorney General Harrison Lewis for the State.*
*Joseph M. Wright for defendant appellant.*

PARKER, C.J.   Defendant is an indigent. The trial court entered an order permitting him to appeal *in forma pauperis* and directed that the County of Cleveland furnish defendant's counsel a transcript of the trial. Defendant's counsel was ordered by the court to perfect his appeal, and the case on appeal and defendant's brief were mimeographed at public expense.

This is the second appeal in this case. At the July 1966 Session of Cleveland County Superior Court, defendant was convicted for the identical offenses for which he was convicted in the instant case. At that Session he received sentences substantially similar to those imposed in the instant case, the only difference being that at that former trial defendant was sentenced to ten years imprisonment on the second count, while on the subsequent trial from which this appeal was taken defendant was sentenced to imprisonment for not less than nine years nor more than ten years on page 4 of the record before us and was sentenced to imprisonment for five years on page 52 of the record before us.

Our decision on the appeal from the conviction in the first trial is reported in *S. v. Ross*, 269 N.C. 739, 153 S.E. 2d 469, wherein the evidence in this case is correctly and adequately summarized which obviates the necessity for a further recapitulation and discussion thereof, with two exceptions:

(1)   In the first appeal a new trial was awarded because of the erroneous admission of evidence that defendant had stated that he was the owner of the hat found on the floor of the Patterson house shortly after it was broken into and Mr. Patterson assaulted. This admission by defendant that he was the owner of the hat was neither offered nor admitted in the instant case.

(2)   In the report of our decision upon the former appeal, Mr. Patterson's injuries were not elaborated in detail. That portion of Mr. Patterson's testimony in the instant case, which clearly indicates the serious extent of his wounds, is as follows:

"I was facing Bobby Ross at that time and he cut me with a

knife. I saw the knife and it was in the shape of a Hawk-Bill and at the time he was about 2 or 2½ feet from me. He had it in his hand and hit my face down across my eye and cheek into my nose. The next time he hit me, then my nose just dropped over on my cheek.

"The knife is what he hit me with. I felt the sting and blood run down across my face; and I knowed I was cut. I commenced trying to get away. He followed me out into the utility room, then run out. As he followed me he cut me, jobbed me a time or two on the back and top of my head around up there (Mr. Patterson removed his shirt, tie, and undershirt and faced the jury before the jury box), indicating — he cut me across the face, struck me right there, my left eye, left side of my nose, down through both lips. The second lick split open my nose."

After Mr. Patterson was cut, he fainted. He regained consciousness in a hospital. He lost a great quantity of blood while the wounds were being sutured. He was given four pints of blood during the operation, and after surgery it was necessary to give him an additional pint of blood. It took 175 sutures to sew his wounds up.

Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence. This assignment of error is overruled because, as indicated by the foregoing, there is plenary evidence in the record before us to carry the case to the jury. 2 Strong, N. C. Index 2d, Burglary and Unlawful Breakings, § 1; S. v. Ferguson, 261 N.C. 558, 135 S.E. 2d 626; S. v. Jones, 258 N.C. 89, 128 S.E. 2d 1.

Defendant assigns as error the denial by the court of his motion made at the close of all the evidence to permit the jury "to visit the scene of the crime and examine Suttle Street, Sumter Street and the houses 402 and 404 on Suttle Street and the area of this fence." Mr. Patterson lived at 304 Suttle Street in Shelby and his home is 250 feet from the intersection of East Suttle and Sumter Streets. Shortly after the assault on Mr. Patterson, two Shelby police officers saw defendant, whom they well knew, crawling under a fence. The evidence does not disclose the distance from the hole under the fence to Mr. Patterson's house. This motion to allow the jury to view the premises was made and denied by the court in the absence of the jury. The offenses here charged were committed on 3 April 1966, and the motion we are considering was made at the July 1967 Session of Cleveland County Superior Court, more than thirteen months after the crimes were committed. It seems to be settled at common law and in this jurisdiction that the trial court has the discretionary

power to grant or refuse a request for a jury view of the premises or object involved in the action. *Paris v. Aggregates, Inc.*, 271 N.C. 471, 482, 157 S.E. 2d 131, 139; *Highway Com. v. Hartley*, 218 N.C. 438, 11 S.E. 2d 314; Stansbury, N. C. Evidence, 2d Ed. § 120; 88 C.J.S. Trial § 47; 53 Am. Jur., Trial § 442. Since this motion was made some thirteen months after the commission of the offenses charged, it would seem that a view of the premises at that late date would not be of substantial aid to the jury in reaching a correct verdict. No abuse of discretion is shown by the judge in denying the motion. This assignment of error is overruled.

Defendant assigns as error the failure of the police officers to advise him of his legal rights "to remain silent, secure the services of an attorney, and call relatives." This assignment of error is overruled. The State's evidence does not reveal whether or not defendant was advised concerning the privilege against self-incrimination as required by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 10 A.L.R. 3d 974. Defendant testified he was not so advised. In the trial on the first appeal defendant was represented in the Superior Court and in the Supreme Court by his court-appointed counsel, C. B. Cash, Jr., and in the second trial he was represented in the Superior Court and in the Supreme Court by his court-appointed counsel, Joseph M. Wright.

In the *Miranda* case the Supreme Court of the United States said:

> "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, *no evidence obtained*

*as a result of interrogation can be used against him."* (Emphasis added.)

The fallacy in defendant's argument is that no evidence obtained as a result of interrogation was used against him. The police officers who testified for the State did not testify as to any statement made by the defendant. It does not appear from the record that the defendant made a statement or admission of any kind. Therefore, it is immaterial whether or not he was warned that any statement he made could be used against him in a court of law.

Defendant took the stand and testified in his own behalf. Prior to this the trial judge informed him of his right not to testify, and advised him that if he did testify the State had the right to cross-examine him and to offer evidence in contradiction to any evidence he might produce. Defendant was not cross-examined as to any statements he made to the officers or to anyone else. Defendant's contention that he was prejudiced by the failure of the officers to advise him of his rights is without merit.

In the trial and judgment in the first count in the indictment, we find no error.

In the trial of the second count in the indictment, we find no error except that there is a variance in the judgments which are inconsistent and contradictory as pointed out above. These variances in the judgments of imprisonment on the second count in the indictment appear on the face of the record proper. These inconsistent and contradictory judgments of imprisonment on the second count are not in defendant's brief. We have found them *ex mero motu.* This Court, pursuant to its inherent power and duty to make its records speak the truth, to correct the mistakes of the clerk or other officers of the court, so that its records shall import verity, and acting under its supervisory power over the lower courts of the State, vacates the conflicting judgments of imprisonment contained in the second count in the indictment and remands the second count in the indictment to the Superior Court of Cleveland County for a proper judgment. If the solicitor desires to pray judgment on the second count in the indictment, the solicitor and defense counsel and the defendant must be present in court where they can be heard, and where if the defendant is dissatisfied with the judgment passed on him in the second count, he can appeal, *S. v. Old,* 271 N.C. 341, 156 S.E. 2d 756.

In the trial and judgment in the first count in the indictment charging burglary in the first degree, we find no error. The judgments on the second count in the indictment are vacated and that count in the indictment is remanded to the Superior Court of Cleveland County for a proper judgment.