THOMAS HUFF AND WIFE, BARBARA F. HUFF v. BRANTLEY THORNTON, CENTRAL CAROLINA FARMERS EXCHANGE, INC., JOSEPH MILTON FULTON, SR., AND J. W. JENKINS, INC.

No. 749SC519

(Filed 6 November 1974)

1. **Rules of Civil Procedure § 50— motion for directed verdict — consideration of incompetent evidence**

    In passing upon a trial court's ruling denying a defendant's motion for directed verdict, the appellate court must consider all of the evidence, including incompetent evidence erroneously admitted over defendant's objections, since the admission of such evidence may have caused the plaintiff to omit competent evidence of the same import.

2. **Rules of Civil Procedure § 50— directed verdict — consideration of evidence on appeal**

    An assignment of error directed to the trial court's ruling on a motion for directed verdict made under G.S. 1A-1, Rule 50(a), does not present for review rulings on the admission or exclusion of evidence.

Huff v. Thornton

3. **Damages § 15— damages to residence — sufficiency of evidence**

In an action to recover for damages sustained by plaintiffs when a gasoline tanker truck owned and driven by defendants struck plaintiffs' residence and automobile, evidence was sufficient to withstand defendants' motions for directed verdict where it tended to show that the house was in good condition and was valued from $25,800 to $28,500 immediately prior to the accident and from $3,500 to $5,800 immediately after the collision, the collision knocked a four foot square hole in the brick veneer of the residence, plastering was cracked, tile flooring was buckled, kitchen cabinets were damaged, the frame of the house was knocked slightly out of square, the roof was raised slightly, doors were jammed shut, and a storm door was broken, and where the evidence tended to show that plaintiffs had to leave their home for 12 to 15 months while repairs were being made, rent on a comparable house was $150 per month, and the cost of moving was $250.

4. **Damages § 13; Evidence § 56— evidence of value — opinion testimony**

In an action to recover damages for injury to real property sustained when defendants' vehicle collided with plaintiffs' residence, the trial court did not err in allowing a witness to express an opinion as to the fair market value of plaintiffs' house immediately prior to the accident, though there was no showing that the witness was familiar with the house prior to the accident, since the evidence did show that the witness was intimately familiar with all the details of the structure as it existed after the accident and only minimal changes had been made in the house except such as directly resulted from the accident.

5. **Damages § 13; Evidence § 56— evidence of value — opinion based on replacement cost**

Though experienced appaisers generally employ the cost approach, the income approach, and the market comparison approach in arriving at their opinion as to the fair market value of a particular piece of property, the trial court did not err in recapitulating opinion testimony of three witnesses where each witness testified that the opinion he had expressed on direct examination as to pre-accident fair market value of the residence had been his estimate of replacement cost.

6. **Damages § 16— instructions — cost of repairing and rebuilding house**

In an action to recover damages sustained when defendants' vehicle collided with plaintiffs' residence, the trial court did not err in instructing the jury that in arriving at their determination of fair market value they should consider, in addition to the other evidence, "the evidence of the parties relating to the costs of repairing the house and the costs of rebuilding the house."

7. **Damages § 5— injury to residence — loss of use — submission of issue proper**

The trial court properly admitted evidence and instructed on loss of use damages, though some of plaintiffs' witnesses testified that in their opinion it would cost more to repair satisfactorily than it would to rebuild, since there was no evidence that plaintiffs' residence

could not be repaired and since there was evidence that it would be necessary for plaintiffs to move out of the house while it was being repaired.

**8. Trial § 13— jury view of damaged house — discretionary matter**

The trial court did not abuse its discretion in denying defendants' motion that the jury be permitted to view plaintiffs' residence.

Judge CAMPBELL dissents.

APPEAL by defendants from *McLelland, Judge,* 3 December 1973 Session of Superior Court held in GRANVILLE County.

On 23 December 1971 a collision occurred on U. S. Highway 158 between trucks owned by the corporate defendants and driven by the individual defendants, causing one of the vehicles, a 3000 gasoline tanker truck, to leave the highway and strike plaintiffs' residence and a parked automobile owned by the male plaintiff. This action for damages resulted. Defendants stipulated their joint liability, and the case was submitted to the jury solely on issues of damages. The jury returned verdict that plaintiffs recover $18,000.00 for damages to real property, that plaintiff, Thomas Huff, recover $600.00 for damages to his personal property, and that plaintiffs recover $1,534.00 for loss of use of real property. From judgment on the verdict, defendants appealed.

*Watkins, Edmundson & Wilkinson by William T. Watkins and C. W. Wilkinson, Jr. for plaintiff appellees.*

*Spears, Spears, Barnes, Baker & Boles by Alexander H. Barnes; and Young, Moore & Henderson by Joseph Yates III for defendant appellants.*

PARKER, Judge.

**[1, 2]**   Defendants assign error to the denial of their motions for directed verdict and in support of this assignment contend that, all of plaintiffs' evidence as to the reduction in the fair market value of their property caused by the accident was incompetent and should have been excluded. In passing upon a trial court's ruling denying a defendant's motion for directed verdict, the appellate court must consider all of the evidence, including incompetent evidence erroneously admitted over defendant's objections. The reason for this rule is that the admission of such evidence may have caused the plaintiff to omit competent evidence of the same import. This rule was long

Huff v. Thornton

recognized in effect under our former practice in reviewing decisions upon motions for nonsuit, *Koury v. Follo,* 272 N.C. 366, 158 S.E. 2d 548 (1968); *Early v. Eley,* 243 N.C. 695, 91 S.E. 2d 919 (1956); *Supply Co. v. Ice Cream Co.,* 232 N.C. 684, 61 S.E. 2d 895 (1950); *Ballard v. Ballard,* 230 N.C. 629, 55 S.E. 2d 316 (1949); *Midgett v. Nelson,* 212 N.C. 41, 192 S.E. 854 (1937); *Morgan v. Benefit Society,* 167 N.C. 262, 83 S.E. 479 (1914), and the reason for the rule continues to apply with equal force in reviewing decisions upon motions for a directed verdict under our new Rules of Civil Procedure. We hold, therefore, that an assignment of error directed to the trial court's ruling on a motion for directed verdict made under G.S. 1A-1, Rule 50 (a) does not present for review rulings on the admission or exclusion of evidence. See 5A, Moore's Federal Practice, ¶ 50.03[2], p. 2334. In so holding we do not intend to imply that we agree with defendants' contention that plaintiffs' evidence in this case was incompetent. We shall express our views in that connection later in this opinion insofar as the trial court's rulings on admissions of evidence are properly presented for our review by appropriate assignments of error. At this point, in reviewing the assignment of error relating to denial of defendants' motion for directed verdict, we examine all of the evidence admitted in the present case for the sole purpose of ascertaining if it establishes the amount of plaintiffs' damages with sufficient certainty to permit the jury to answer the issues submitted. If so, defendants' motions for directed verdict were properly denied.

[3] There was uncontradicted evidence that the automobile owned by the plaintiff, Thomas Huff, had a fair market value of $600.00 just prior to being hit by the tanker truck and had no value after the accident, and on this appeal defendants bring forward no assignment of error relating to the claim for damages to personal property. As to the claim for damages to plaintiffs' residence, the evidence, viewed in the light most favorable to plaintiffs, tended to show: Plaintiffs' residence was a three-bedroom brick-veneer house containing approximately 1200 to 1400 square feet. It was located on a .88 acre tract of land on which there was also located a store operated by plaintiffs. Plaintiffs had purchased the entire .88 acre tract, including the storebuilding and the residence, in 1967 for $25,000.00. The residence building was approximately 15 years old at the time it was damaged on 23 December 1971. Prior to being

struck by the tanker truck, it was in good condition. A new roof had been recently installed and the exterior woodwork and a portion of the interior had been recently painted. As a result of being struck by the tanker truck, a hole approximately 4 feet by 4 feet was knocked in the brick veneer at the corner of the residence where the tanker truck hit, plastering in the house was cracked, tile flooring in the kitchen was buckled, kitchen cabinets were damaged, the frame of the house was knocked slightly out of square, the roof was raised slightly, doors were jammed shut, and a storm door was broken. Plaintiffs' witnesses testified as to the fair market value of the residence immediately before and immediately after the accident. In this regard the opinions expressed by plaintiffs' witnesses as to the fair market value immediately before the accident ranged from a low of $25,800.00 to a high of $28,500.00 and as to the fair market value immediately after the accident the opinions ranged from a low of $3,500.00 to a high of $5,800.00. On the claim for loss of use of real property, there was evidence that it would be necessary that plaintiffs leave their home while it was being repaired, that it would take 12 to 15 months to complete the repairs, that rent on a comparable house would be $150.00 a month, and that cost of moving would be $250.00. When we view all of the evidence in the light most favorable to plaintiffs, we find it amply sufficient to withstand defendants' motions for a directed verdict.

[4]   Defendants next contend that the court erred in permitting plaintiffs' witness, Daniel, to testify over defendants' objections as to his opinion of the fair market value of the residence immediately prior to the accident. In support of this contention, defendants argue in their brief that it was not established that Daniel was familiar with plaintiffs' home prior to the accident and that he was not tendered as an expert witness to testify in response to a hypothetical question. There was evidence, however, that Daniel had been in the real estate and insurance business since 1945, that he was familiar with prices of real estate in Granville County, and that he had been to the Huff house, though the date of this visit was not shown. His subsequent testimony revealed that he had examined plaintiffs' residence with great care, taking measurements and computing its square footage, and that he was intimately familiar with all details of the structure as it existed after the accident. There was also evidence that only minimal changes had been made in plaintiffs' residence except such as directly resulted from the

Huff v. Thornton

accident. We also note that of all of plaintiffs' witnesses, Daniel gave the lowest before-accident valuation and highest after-accident valuation. We find no prejudicial error in the court's permitting him to express an opinion as to the fair market value of plaintiffs' house immediately prior to the accident.

[5]    Under cross-examination, Thomas Huff, one of the plaintiffs, and two of plaintiffs' other witnesses, Clark and Morgan, who were building contractors, each testified that the opinion he had expressed on direct examination as to pre-accident fair market value of the residence had been his estimate of replacement cost. Defendants contend that this testimony elicited by cross-examination so completely destroyed the direct examination testimony of these witnesses that it was error for the judge in charging the jury to recapitulate the direct examination opinion testimony of these witnesses. We do not agree. In the appraisal of property there are three standard approaches, namely, (1) the cost approach, (2) the income approach, and (3) the market comparison approach. See *Redevelopment Comm. v. Panel Co.*, 273 N.C. 368, 159 S.E. 2d 861 (1968). Experienced appraisers generally employ all three approaches in arriving at their opinion as to the fair market value of a particular piece of property. The fact that defendants were able to show by cross-examination that the three witnesses above referred to in this case employed only one of the three standard approaches did not utterly destroy their testimony. It merely permitted the jury to evaluate that testimony better. Appraisal of an individual tract of real property is at best an inexact procedure, and determination of its fair market value, which by standard definition is the price at which it would have sold on a given date in a transaction which never occurred between willing but uncompelled seller and buyer who never existed, can never be arrived at with scientific certainty. In this case we find no error in the portion of the court's charge recapitulating for the jury the testimony of plaintiffs' witnesses.

[6]    In *Paris v. Aggregates, Inc.*, 271 N.C. 471, 157 S.E. 2d 131 (1967) our Supreme Court said that "[i]n cases where the injury [to real property] is completed or by a single act becomes a *fait accompli*, and which do not involve a continuing wrong or intermittent or recurring damages, the correct rule for the measure of damages is the difference between the market value of the property before and after the injury." Our Supreme Court has in general adhered to this diminution in value formula as

the correct rule for determining damages in such cases. *Broadhurst v. Blythe Brothers Co.*, 220 N.C. 464, 17 S.E. 2d 646 (1941) ; *Owens v. Lumber Co.*, 212 N.C. 133, 193 S.E. 219 (1937) ; *Construction Co. v. R. R.*, 185 N.C. 43, 116 S.E. 3 (1923). Under some circumstances other courts have held the reasonable cost of restoring or repairing the damage to be an appropriate measure. See Dobbs, Handbook on the Law of Remedies, § 5.1 at 312-18 (1973). In this case the trial court correctly instructed the jury in accord with the formula approved by our Supreme Court that they should award the plaintiffs such amount as the jury should find by the greater weight of the evidence "represents the difference between the fair market values of the plaintiffs' residence immediately before and immediately after the damage occurred." The court also correctly defined fair market value as "the amount which would be agreed upon as a fair price by an owner who wishes to sell but is not obliged to do so, and a buyer who wishes to buy but is not compelled to do so." Defendants do not except to these portions of the court's charge, but they do assign error to the portion of the charge in which the court instructed the jury that in arriving at their determination of fair market value they should consider, in addition to the other evidence, "the evidence of the parties relating to the costs of repairing the house and the costs of rebuilding the house." As to costs of repairs, plaintiffs' witness Morgan estimated that "[i]f the house was not out of square," repair costs of $9,683.40 "would put the house back into substantially the same condition it was in before the accident," while defendants' witnesses testified to repair costs ranging from a low of $4,685.00 to a high of "approximately $10,000.00." Since most of the evidence as to repair costs was supplied by defendants and all of such evidence showed figures substantially less than plaintiffs' evidence tended to show under the diminution in value formula, manifestly defendants could only have been helped, not harmed, by the fact that the court instructed the jury to consider such evidence. As to the court's reference to the evidence as to "the costs of rebuilding the house," if it be assumed that the jury might have understood that the court was referring to some amount greater than the repair costs, such as, for example, the full replacement cost of the residence, yet we find no prejudicial error in the court's making such a reference in the context in which it was made in the court's charge. We note that the court's language could not reasonably be interpreted as conveying to the jury any understanding that they might award full replacement costs

as the amount of plaintiffs' damages. Rather, it is clear that the court instructed the jury to consider the evidence of the parties as to "the costs of rebuilding the house" only for purposes of arriving at their determination of fair market value, a determination which it was necessary for the jury to make in applying the diminution in value formula. Moreover, as hereinabove noted, the cost approach is at least one of the recognized standard approaches employed in making appraisals of real property. We find no prejudicial error in the portions of the charge complained of.

[7]   Defendants assign error to the court's actions admitting evidence concerning loss of use damages and in instructing on that issue. In this connection defendants contend that some of plaintiffs' evidence tended to show that their residence was damaged beyond repair. Defendants argue that if this be true, then plaintiffs should not be permitted to recover for loss of use of their residence for any period of time but should be limited to the diminution in value of their property as the full measure of their damages. However, defendants mistake the purport of plaintiffs' evidence. Although some of plaintiffs' witnesses testified that in their opinion it would cost more to repair satisfactorily than it would to rebuild, there was no evidence that plaintiffs' residence could not be repaired. Since this was so and since there was also evidence that it would be necessary for plaintiffs to move out of the house while it was being repaired, we see no reason why plaintiffs in this case were not entitled to an award of damages for loss of use of their property as well as for the diminution in its value caused by defendants' tort. It would seem necessary that plaintiffs receive such an award if they are to be made whole. The amount awarded by the jury for loss of use was well within the amount which would have been supported by the evidence.

[8]   Defendants assign error to the denial of their motion that the jury be permitted to view plaintiffs' residence. Such a motion is addressed to the sound discretion of the trial court. *State v. Ross*, 273 N.C. 498, 160 S.E. 2d 465 (1968) ; *Paris v. Aggregates, Inc., supra; State v. Smith*, 13 N.C. App. 583, 186 S.E. 2d 600 (1972). No abuse of discretion has been here shown.

Defendants noted 82 assignments of error in the record and brought forward many of these in their brief. We have discussed those which we consider the most important and have carefully considered all the remainder. We find no error suffi-

ciently prejudicial to warrant a new trial. Accordingly, in the trial and judgment appealed from we find

No error.

Judge VAUGHN concurs.

Judge CAMPBELL dissents.