· STATE OF NORTH CAROLINA v. ROBERT MARVIN POPE, JR.

No. 745SC802

(Filed 18 December 1974)

1. Criminal Law § 88— cross-examination — limitation proper

Trial court did not err in refusing to allow the witness who was decedent's brother and who was present at the scene of the homicide to answer the question, "Of course, you realize if you had anything to do with starting the argument with him [defendant] that your family might hold you responsible for your sister's death, don't you?"

2. Witnesses § 1— minor children of defendant — competency to testify

The trial court did not abuse its discretion in determining that three children of defendant and decedent who were eight, ten, and thirteen years old were competent to testify in this murder prosecution.

3. Criminal Law § 62— polygraph evidence — admissibility

Polygraph evidence is not admissible in evidence in the trial of criminal cases.

4. Criminal Law § 112— reasonable doubt — instructions proper

Trial court did not err in failing to instruct that a reasonable doubt must be "one growing out of the evidence or the insufficiency of the evidence."

5. Criminal Law § 117— prosecuting witness — instructions to scrutinize testimony

To require an instruction to scrutinize interested prosecution witnesses as well as interested defense witnesses would improperly and prejudicially discredit the testimony of the prosecuting witnesses and would be an unwarranted extension of the interested witness rule.

6. Homicide § 27— involuntary manslaughter — instructions on proximate cause and unlawful pointing of gun proper

Trial court in this first degree murder case properly defined proximate cause and unlawful pointing of a gun in charging on the elements of involuntary manslaughter.

7. Homicide § 25— instruction on .38 caliber pistol as deadly weapon — no expression of opinion

Trial court's instruction that "in determining whether the thirty-eight caliber pistol is a deadly weapon," did not amount to an expression of opinion since defendant stipulated that his wife died as the result of a gunshot wound and testified that he had his .38 caliber gun in his hand when his wife entered the room and the gun fired.

8. Homicide § 27— first degree murder case — instruction on heat of passion

Trial court's instruction as to heat of passion that "it means that the defendant's state of mind was at the time so violent as to over-

---

State v. Pope

---

come his reason, so much so that he could not think to the extent neces-
sary to form a deliberate purpose and control his actions," did not
require defendant to prove that he was legally insane in order to negate
the element of malice and to reduce the offense from murder to man-
slaughter.

ON *certiorari* to review trial before *Rouse, Judge,* 1 Jan-
uary 1973 Session of Superior Court held in NEW HANOVER
County. Heard in the Court of Appeals 10 December 1974.

Defendant was charged in an indictment with the first
degree murder of his wife on 23 October 1972. He pleaded not
guilty and was tried before a jury.

The State's evidence tended to show that on 21 October
1972, after an altercation with her husband, Hilda Harrelson
Pope left their home near Wilmington, taking with her the four
children of the marriage. On the morning of 23 October 1972,
accompanied by two of her children and her brother, she re-
turned to get some belongings. Defendant, Marvin Pope, who
had been standing in a telephone booth by the roadside, saw his
wife pass by and followed her home. He entered the house first,
followed by his wife, his brother-in-law, Carroll Lennon (Lenny)
Harrelson, and the children. Lenny Harrelson testified that he
saw defendant standing in the living room some eight or ten
feet from him and his sister near the kitchen. Defendant was
holding a pistol. He fired, the children ran from the house, and
Hilda Pope stepped backward to the door and fell to the carport.
She was found dead with a bullet wound in her chest. Defend-
ant got in his car and drove away. With the jury absent, the
trial judge determined that the children, ages eight and ten,
were competent witnesses and then allowed them to testify in
corroboration of Lenny Harrelson's testimony. A third child,
age thirteen, testified concerning previous assaults by defendant
upon decedent.

Defendant called several witnesses and also testified in his
own defense. His evidence tended to show that when Hilda
Pope returned home, defendant and his brother-in-law had an
argument. Lenny Harrelson was standing near the kitchen,
where defendant knew knives were kept. Defendant reached into
the stereo speaker in the living room, pulled out a .38 caliber pis-
tol, and pointed at Harrelson to make him leave. Hilda Pope
then stepped between the two men and the gun went off. De-
fendant testified that he did not intend to shoot decedent or her

brother. He drove to nearby Wrightsville Beach where his brother Johnny was working. Johnny Pope testified that defendant "was crying and told me he thought something terrible had happened." He then telephoned a nephew, Hovie W. Pope, Jr., a Wilmington policeman, and subsequently learned that Hilda Pope was dead.

Johnny Pope and his son, Robert Cecil Pope, testified that when they went to defendant's house to investigate, Lenny Harrelson told Johnny Pope that he and defendant had argued before defendant reached for the gun. Both witnesses were questioned concerning results of polygraph examinations, but their answers were excluded, as was the testimony of the polygraph examiner.

The judge gave full instructions on first degree murder, and lesser included offenses, and the defenses of provocation and self-defense. The jury found defendant guilty of second degree murder, and the judge imposed sentence of 25 to 30 years imprisonment. Defendant did not appeal. This Court granted certiorari.

*Attorney General James H. Carson, Jr., by Assistant Attorney General Sidney S. Eagles, Jr., and Assistant District Attorney, Fourteenth Judicial District, Robert L. Farb, for the State.*

*Loflin, Anderson & Loflin, by Thomas B. Anderson, Jr., for defendant appellant.*

ARNOLD, Judge.

[1] In his first assignment of error defendant contends that in the following instance he was denied the right to confront the witness, Lenny Harrelson:

"Q. Of course, you realize if you had anything to do with starting the argument with him that your family might hold you responsible for your sister's death, don't you?

MR. MOORE: Objection.

COURT: Sustained."

Latitude of cross-examination is a matter well within the discretion of the trial court. *State v. McPherson,* 276 N.C. 482; 172 S.E. 2d 50; *State v. Dickens,* 11 N.C. App. 392, 181 S.E. 2d 257. Although defendant is entitled to elicit facts which tend

to show bias in order to impeach a witness, *see* 1 Stansbury, N.C. Evidence (Brandis rev.), § 45, he has failed to show how he may have been prejudiced by the trial court's refusal to allow this witness to respond to a clearly argumentative question. The jury knew the witness was decedent's brother and that he was present at the time of the shooting.

**[2]** Defendant next assigns as error the trial court's determination that the three minor witnesses were competent to testify. Competency of witnesses is clearly within the trial court's discretion and is reviewable only in case of abuse, which does not here appear. 7 Strong, N. C. Index 2d, Witnesses, § 3, p. 693; *McCurdy v. Ashley,* 259 N.C. 619, 131 S.E. 2d 321. The test of competency is the capacity to understand and relate under oath facts which will assist the jury in finding the ultimate facts. *State v. Cooke,* 278 N.C. 288, 179 S.E. 2d 365. Each of the children stated on voir dire that he knew what it meant to swear to tell the truth. From his observation of their intelligence and demeanor, the trial court had ample grounds from which to conclude that each child was a competent witness.

**[3]** Defendant's third assignment of error concerns the admissibility of polygraph evidence. In *State v. Foye,* 254 N.C. 704, 708, 120 S.E. 2d 169, 172, our North Carolina Supreme Court rejected such evidence, saying:

> "[W]e are of opinion that the foregoing enumerated difficulties alone [lack of general scientific recognition, tendency to distract the jury, inability to cross-examine machine, no corresponding necessity for submission to tests by the prosecution] in conjunction with the lie detector use presents obstacles to its acceptability as an instrument of evidence in the trial of criminal cases, notwithstanding its recognized utility in the field of discovery and investigation, for uncovering clues and obtaining confessions. This conclusion is in line with the weight of authority repudiating the lie detector as an instrument of evidence in the trial of criminal cases."

Defendant nevertheless urges us to accept the polygraph in light of technological and judicial advances since *Foye* was decided in 1961. The weight of authority still supports the *Foye* view, however, *see* Annot., 23 A.L.R. 2d 1306 (Later Case Service 1970), and we decline to hold adherence to *Foye* to be prejudicial error.

State v. Pope

Assignments of error four and five deal with evidence which was properly excluded as irrelevant or hearsay and merit no further discussion.

[4] Defendant's last assignments of error involve the court's charge to the jury. Citing *State v. Bright,* 237 N.C. 475, 478, 75 S.E. 2d 407, 409, he contends that the court erred in failing to charge that a reasonable doubt must be "one growing out of the evidence or the insufficiency of the evidence." We do not agree with this contention. When the evidence is direct and not circumstantial and there is ample evidence to support the verdict, an unqualified instruction on reasonable doubt is not prejudicial. *State v. Gaiten,* 277 N.C. 236, 176 S.E. 2d 778; *State v. Britt,* 270 N.C. 416, 154 S.E. 2d 519.

[5] Defendant next urges this Court to overrule its decision in *State v. Williams,* 6 N.C. App. 611, 170 S.E. 2d 640, holding that it was not error to fail to give an instruction to scrutinize interested prosecution witnesses as well as interested defense witnesses. In *Williams,* we concluded that to require such instruction would " 'improperly and prejudicially' discredit the testimony of the prosecuting witnesses and would be an unwarranted extension of the interested witness rule. . . . " *Id.* at 613, 170 S.E. 2d at 641. We continue to follow this rationale and find no error in the instruction given.

[6] Defendant also contends that the court erroneously instructed on the elements of involuntary manslaughter by failing properly to define proximate cause and unlawful pointing of a gun. After reviewing the charge we feel that the court correctly defined the crime of involuntary manslaughter and properly outlined the elements necessary for the State to prove in order to find defendant guilty of involuntary manslaughter. Defendant argues that under *State v. Mizelle,* 13 N.C. App. 206, 185 S.E. 2d 317, the trial court is required to instruct that foreseeability is an element of proximate cause. In that opinion this Court cited *State v. Dewitt,* 252 N.C. 457, 114 S.E. 2d 100, wherein the North Carolina Supreme Court held that the trial court must instruct fully on proximate cause as it relates to the facts of the particular case. In *Mizelle,* defendant was indicted and convicted on a charge of involuntary manslaughter. In the case at bar, defendant was indicted on a charge of first degree murder and was convicted of second degree murder. Under the facts of the case, foreseeability was not seriously in issue. Defendant admitted that he held a loaded gun and pointed it at

Lenny Harrelson, who was standing close to decedent. We find the instruction sufficient on both causation and the unlawful act. *State v. DeWitt, supra. Accord, State v. Phelps,* 242 N.C. 540, 89 S.E. 2d 132; *State v. Sawyer,* 11 N.C. App. 81, 180 S.E. 2d 387. For the reasons stated above, we also find no error in the proximate cause portion of the instruction on second degree murder.

[7] Defendant contends that in instructing the jury "[i]n determining whether the thirty-eight caliber pistol is a deadly weapon," the court expressed an opinion that defendant's .38 caliber gun caused his wife's death. This contention is without merit. Defendant stipulated that his wife died as the result of a gunshot wound and testified that he had his .38 caliber gun in his hand when his wife entered the room and the gun fired. The court was not expressing an opinion but merely reciting evidence not in dispute.

[8] In defining heat of passion, the trial court said:

> "It means that the defendant's state of mind was at the time so violent as to overcome his reason, so much so that he could not think to the extent necessary to form a deliberate purpose and control his actions."

Defendant argues that such instruction requires him to be legally insane in order to negate the element of malice and to reduce the offense from murder to manslaughter. *See State v. Wynn,* 278 N.C. 513, 180 S.E. 2d 135; *State v. Cooper,* 273 N.C. 51, 159 S.E. 2d 305. We disagree. In *State v. Jennings,* 276 N.C. 157, 161, 171 S.E. 2d 447, 450, the North Carolina Supreme Court quoted with approval Black's Law Dictionary's definition of heat of passion as "rage, anger, hatred, furious resentment, or terror, rendering the mind incapable of cool reflection." Legal insanity, in contrast, requires that the accused be laboring under such defect of reason from disease of the mind as to be incapable of knowing the nature and quality of his act, or if he does know this, not to know right from wrong. *State v. Mercer,* 275 N.C. 108, 165 S.E. 2d 328. The trial court's definition of heat of passion fell far short of the insanity test approved by our courts and placed no improper burden on defendant.

We have examined defendant's other assignments of error relating to the charge and find all to be without merit. While isolated portions of the charge may be somewhat incomplete, they will be read in context. *State v. Bailey,* 280 N.C. 264, 185

S.E. 2d 683, *cert. denied,* 409 U.S. 948 (1972). In this light they appear to charge adequately on the material aspects of the case arising on the evidence. *See State v. Craddock,* 272 N.C. 160, 158 S.E. 2d 25.

Defendant has been accorded a vigorous defense, but the evidence against him was strong and convincing. While he may not have received a perfect trial, he has received a trial free from prejudicial error.

No error.

Chief Judge BROCK and Judge MORRIS concur.