STATE OF NORTH CAROLINA v. WILBERT JUNIOR ROGERS

No. 7915SC68

(Filed 2 October 1979)

1. **Criminal Law § 101.3— denial of jury view**

      In this prosecution for murder allegedly committed by throwing the victim from a bridge into the water below, the trial court did not abuse its discretion in the denial of defendant's motion for a jury view of the bridge where there was evidence that the automobile from which defendant pulled the victim was only eight feet from the end of the bridge and the first 36 feet of the bridge were over dry land, since the jury could make a judgment on this evidence without a view of the bridge.

2. **Criminal Law § 89.5— slight variances in corroborating testimony**

      A witness's testimony was not so different from the testimony of another witness that it could not be considered in corroboration of the testimony of the other witness.

3. **Homicide § 21.7— second degree murder—throwing victim from bridge**

      The State's evidence was sufficient to sustain a conviction of second degree murder where it tended to show that defendant forcibly kept the vic-

tim in his automobile late one night, drove him to a bridge, pulled him from the automobile and forced him over the side of the bridge into the cold water below.

**4. Homicide § 27.1— erroneous instruction on heat of passion—harmless error**

Defendant was not prejudiced by the court's erroneous instruction that the jury could not convict defendant of second degree murder if the State proved that defendant's passion had cooled, since the instruction was more favorable to defendant than he was entitled to receive, and any prejudice was cured when the court, at the jury's request, thereafter properly defined second degree murder and voluntary manslaughter and properly placed the burden of proof on the State.

**5. Criminal Law § 114.3— instructions—no assumption that fact proven**

The trial court in a homicide case did not assume that it had been proven that defendant pushed the victim off a bridge by an instruction that the jury should not return a verdict of guilty of second degree murder if it had a reasonable doubt that defendant "threw [the victim] over intentionally."

**6. Homicide § 24.2— instructions—burden of proof of malice**

The trial court's instruction in its final mandate that the jury should return a verdict of guilty of voluntary manslaughter if the State "has not satisfied you" that defendant acted with malice could not have misled the jury as to the State's burden of proof for second degree murder where the court had already properly charged the jury that it must be satisfied "beyond a reasonable doubt" that defendant acted with malice in order to find him guilty of second degree murder.

**7. Homicide § 23.2— failure to instruct on foreseeability as element of proximate cause**

Failure of the trial court in a murder case to charge the jury that foreseeability is an element of proximate cause did not constitute prejudicial error where foreseeability was not seriously in issue.

Judge MITCHELL concurs in the result.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 24 August 1978 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 6 April 1979.

The defendant was tried for second degree murder. The State's evidence tended to show that on the night of 24 December 1977 the defendant agreed for a price to carry Ray Yancey and several other persons to a certain place in Alamance County known as the Zodiac. On the way to the Zodiac, a fight occurred between the defendant and several passengers in the automobile. Several persons left the automobile and defendant then took on more passengers. After driving a short distance, defendant then

ordered one Charles Elbert Snipes to get out of the automobile. Mr. Snipes asked to be allowed to remove his friend Ray Yancey from the automobile, which request was refused by defendant. As Mr. Snipes got out of the automobile, defendant struck him twice in the face with his fist. As Mr. Snipes was fleeing from the vehicle, he heard what was either a firecracker or a gunshot. Robert Moore then testified for the State that he rode further with defendant and several other persons, including Ray Yancey, to a bridge on Highway 62. He testified he saw defendant pull Ray Yancey, who was asleep, from the automobile. He saw defendant go to the edge of the bridge with Ray Yancey and he heard someone say, "Man, don't throw that boy in that cold-ass water," and then he heard the water splash. Daniel Qualls, a deputy sheriff of Alamance County, testified that the body of Talmadge Ray Yancey was found under the Stoney Creek Bridge on 5 January 1978.

The defendant did not offer any evidence. He was convicted of second degree murder.

*Attorney General Edmisten, by Associate Attorney Grayson G. Kelley, for the State.*

*Hemric and Hemric, by H. Clay Hemric, Jr., for defendant appellant.*

WEBB, Judge.

[1]  Defendant's first assignment of error deals with the court's denial of his motion that the jury be allowed to view the scene at the bridge. The trial judge has discretionary power to grant or refuse a request for a jury view of the premises. *State v. Ross*, 273 N.C. 498, 160 S.E. 2d 465 (1968); *State v. Smith*, 13 N.C. App. 583, 186 S.E. 2d 600 (1972). The defendant argues that the court abused its discretion in that the evidence showed the automobile was only eight feet from the end of the bridge when the deceased was thrown from the bridge and the evidence also showed the first 36 feet 3 inches of the bridge was over dry land. Since this was in evidence, the jury was able to make a judgment on this evidence without a view of the bridge. The defendant's first assignment of error is overruled.

[2]   The defendant next assigns as error the admission of the testimony of Daniel Qualls, a detective with the Alamance County Sheriff's Department, offered to corroborate other witnesses. Defendant contends it did not corroborate other witnesses. Defendant specifically objects to the following testimony of Mr. Qualls:

> "[Robert Moore] relates this. Says that they stop the vehicle, that the defendant, Wilbert Rogers, gets out, goes around in front of the vehicle, opens the passenger's door on the car, takes the defendant — correction, takes the victim, Talmadge Yancey, out, takes him over to the side of the bridge and throws him over. He hears the man hit the water, hears the splash."

Robert Moore actually testified as follows:

> "Well, he — he — he pulled him out and went to the bridge with him. I heard Charlie say, 'Man,' say, 'don't throw that boy in that cold-ass water,' and about this time I heard the water splash."

We hold that this testimony of Mr. Qualls as to what Robert Moore told him was not so different from the testimony of Robert Moore that it could not be considered in corroboration of Robert Moore's testimony.

The defendant's next assignment of error deals with the sustaining of an objection to a question asked on cross-examination of Daniel Qualls. Mr. Qualls testified on cross-examination that Robert Moore told him everything that happened on the bridge consumed ten to fifteen seconds and that he heard Robert Moore testify in court that it took five seconds. The following colloquy then took place.

> "Q. Is there — has there been any other change in his statement like that?
>
> MR. JOHNSON: Objection, your Honor.
>
> COURT: Sustained."

The answer which Mr. Moore would have given is not in the record. The defendant has not shown how he was prejudiced by the sustaining of this objection. In the absence of such a showing

we cannot say the court abused its discretion by sustaining this objection. *See State v. McPherson*, 276 N.C. 482, 172 S.E. 2d 50 (1970).

[3] The defendant next assigns as error the refusal of the court to grant his motion for a verdict of acquittal to the charge of second degree murder. There is substantial evidence that late one night the defendant forcibly kept the deceased in the automobile, drove him to a bridge, pulled him from the automobile and forced him over the side of the bridge into cold water. This is evidence which sustains a verdict of second degree murder. *See State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971).

[4] The defendant's remaining assignments of error pertain to the charge. He says first the following portion of the charge was in error:

> "If the State does not prove beyond a reasonable doubt . . . that his action was so soon after the provocation that the passion of a person of average mind and disposition would not have cooled, then you may not find the defendant guilty of second degree murder, but he would at most be guilty of voluntary manslaughter."

By using the two negatives as it did, the court gave to the defendant a charge more favorable than he was entitled to receive. The court in effect charged the jury that if the State proved the passion of the defendant had cooled, they could not convict him of second degree murder. Whatever prejudice the defendant may have suffered was cured when the jury returned to the courtroom and asked the court to explain to them the crimes with which the defendant was charged. At this time the court properly defined second degree murder and voluntary manslaughter and properly placed the burden of proof on the State. If there were any confusion in the minds of the jury, it should have been eliminated when this happened. Defendant relies on *State v. Cousins*, 289 N.C. 540, 223 S.E. 2d 338 (1976). In that case our Supreme Court reversed the superior court for charging that in order to convict the defendant of voluntary manslaughter, the State had to prove beyond a reasonable doubt "that the killing occurred sufficiently long after the occurrence of such provocations may have existed that the passion of a person of average mind and disposition may have cooled." The Court in that case did not discuss the possibility that this charge may have been too favorable to the defendant.

There was in that case no correcting instruction which could have eliminated any confusion in the jury's mind. We hold that *Cousins* is distinguishable from the case sub judice. This assignment of error is overruled.

[5]  The defendant next says the court in its charge assumed as proven beyond a reasonable doubt the fact that defendant pushed deceased off the bridge. He argues this is so because in his final mandate Judge McLelland said:

> "If, however, you . . . have a reasonable doubt that the facts are that he threw Yancey over intentionally, . . . you will not return a verdict that he's guilty of second degree murder . . . ."

We do not agree that this statement shows Judge McLelland assumed that it was proven beyond a reasonable doubt that defendant pushed the deceased off the bridge. Judge McLelland, by this statement, left it to the jury to determine if deceased was thrown from the bridge. This assignment of error is overruled.

The defendant next assigns as error what he says is a misstatement by the court when recapitulating the evidence. We cannot find in the record that the defendant called this to the court's attention before the case went to the jury. However, we do not base our decision on this point. Defendant contends the court misstated the evidence when it said the following:

> "[T]hat as Robert Moore, one of the passengers, testified the defendant stopped the car on a bridge on Highway 62 north of Burlington called, as I recall it, the Stoney Creek Bridge or the Mine Creek Bridge, pulled Yancey, Talmadge Ray Yancey, out of the car and pushed him over the bridge producing a splash . . . ."

We hold that this summary of the evidence was in accord with the testimony of Robert Moore.

[6]  The defendant next contends the court erred in its charge by not requiring the State to prove beyond a reasonable doubt that defendant acted with malice in order to convict him of second degree murder. The defendant quotes the following portion of the charge in support of this contention:

"[B]ut [if] the State has not satisfied you that he acted with malice in so doing or has not satisfied you that he did not act in the heat of passion upon adequate provocation, then it would be your duty to return a verdict that he is guilty of voluntary manslaughter."

This portion of the charge came from the final mandate of the court and dealt with the charge of voluntary manslaughter. Judge McLelland had already properly charged the jury that it must be satisfied beyond a reasonable doubt that the defendant had acted with malice in order to find him guilty of second degree murder. As this questioned portion of the charge dealt with voluntary manslaughter, we do not believe it misled the jury as to second degree murder.

[7] The defendant's last assignment of error deals with the court's definition of proximate cause. The court did not tell the jury that foreseeability is a part of proximate cause. The defendant relies on *State v. Mizelle*, 13 N.C. App. 206, 185 S.E. 2d 317 (1971) which states that foreseeability is an essential element of proximate cause. In *State v. Pope*, 24 N.C. App. 217, 210 S.E. 2d 267 (1974) this Court interpreted *Mizelle*. In *Mizelle*, the defendant was charged with involuntary manslaughter. In *Pope*, as in the case sub judice, the defendant was charged with first degree murder and convicted of second degree murder. In *Pope*, this Court held that if foreseeability was not seriously in issue, it was not reversible error in a murder case not to charge the jury that foreseeability is an element of proximate cause. In the case sub judice it is hard to believe that anyone could argue death or some similar injurious result is not foreseeable when a person is pushed off a bridge on a cold winter night. We hold that foreseeability was not seriously in issue in this case. *State v. Pope, supra*, governs. The defendant's last assignment of error is overruled.

No error.

Judge MARTIN (Robert M.) concurs.

Judge MITCHELL concurs in the result.