ADDIE B. SUTHERLAND v. HICKORY NUT CORPORATION

No. 7429SC695

(Filed 6 November 1974)

1. Waters and Watercourses § 1— lower land — dirt and rocks carried by surface water

While a lower landowner is required to receive surface waters from higher lands when they flow naturally therefrom, he is not required to receive from the the higher land dirt and rocks which have been piled thereon by the upper landowner and which, in the natural condition of the lands, would not be carried by the normal flow of surface waters from the upper to the lower tracts.

2. Waters and Watercourses § 1— change in topography by upper landowner — mud taken to lower land — sufficiency of findings

Evidence was sufficient to support findings of fact by the trial court that defendant changed the natural drainage of land by cutting a road into the mountain and piling the excess mud and dirt on the downhill side of the road, and that this alteration of the topography of the land caused mud and silt to be washed by surface waters in a manner different than had naturally existed prior to that time.

APPEAL by defendant from *Martin (Harry C.), Judge,* May 1974 Session of RUTHERFORD County Superior Court. Heard in the Court of Appeals on 16 October 1974.

This was an action for damages sustained to plaintiff's property because defendant constructed roads on its adjacent mountain land thereby altering the natural drainage of surface water and causing silt and mud to stop up a drain and damage plaintiff's house and property. The defendant denied any change in the natural drainage of surface water.

The parties stipulated that the plaintiff was the owner of her property and that her property borders the defendant's property on the northern edge; that the properties were contiguous; that any construction work performed on defendant's property was performed by the defendant; that there was a pipe for the passage of water which flows under the plaintiff's house, and this pipe was present prior to any work done on the defendant's property; that plaintiff does not seek permanent damages but only damages to the time of trial.

The court heard the case without a jury.

The evidence for the plaintiff was that she had owned the property and house in question since 1966. The house is

located over a small two-foot wide stream which prior to the defendant's construction was clear and unpolluted without any mud or silt therein. The stream under the house flows through a 22-inch pipe. Prior to the construction of roads by the defendant, neither the plaintiff nor her predecessors had ever experienced any trouble with overflows or flooding. Early in 1973, during a rain storm, the plaintiff's son witnessed a great deal of mud and silt flowing down the stream causing the pipe under plaintiff's property to fill up and overflow resulting in substantial damage to the basement and other areas of plaintiff's house. The son followed the stream up to the defendant's property and found that the mud was coming from a road being constructed there by the defendant. The mud was entering the stream directly below the road enlarging and causing it to overrun its bounds.

The defendant's evidence was to the effect that the road did not alter the natural drainage of the water nor change its path and that the road was built in conformity with engineering plans. The defendant's engineer testified that when the grading was done, they cut into the side of the mountain and piled the dirt on the downhill side. Thereafter, ditches were cut to run the water off the road and eventually into the stream.

At the conclusion of the evidence, the trial court entered a judgment as follows:

"The above entitled action, having duly and regularly come on to be heard and the Court having fully heard the matter; and the Court, having heard this matter without a Jury, hereby makes the following findings of fact:

1. The plaintiff, Addie B. Sutherland, is the owner of certain real property described in the Complaint herein; said real property being located in the Town of Lake Lure, Rutherford County, North Carolina, and being more specifically located in the Tryon Bay area of Lake Lure.

2. That the defendant, Hickory Nut Corporation is the owner of certain real property described in the Complaint herein; said real property being located in the Town of Lake Lure, Rutherford County, North Carolina; and being more specifically located near the Tryon Bay area of Lake Lure.

3. That the real property of the plaintiff is located adjacent to the shore of Lake Lure; that the real property of the defendant is adjacent to that of the plaintiff, but not adjacent to Lake Lure; said real property of the defendant being located at a higher elevation than that of the plaintiff.

4. That during the years, 1972 and 1973, the defendant constructed roads upon its land; that said roads constructed by the defendant were the only roads constructed at this time within the watershed area in which is found the property of the plaintiff; that no roads have been constructed in the aforesaid watershed area by anyone except the defendant from the beginning of the defendant's construction in 1972 to the date of trial in this action.

5. That the aforesaid roads were not paved with asphalt or any other paving material; that the dirt excavated in the grading and construction of said roads was not taken away from the real property owned by the defendant, but was left in the watershed area referred to above in Item Number 4, said dirt, in part, being placed on the 'downhill' side of said roads.

6. That in the watershed area referred to above, a small stream, up about two feet in width, flows through the defendant's land onto the land of the plaintiff; that when the stream reaches the land of the plaintiff it flows into a twenty-two inch pipe which carries the water from the stream under the home of the plaintiff and then to the shore of Lake Lure where the water empties into the aforesaid lake.

7. That the grading and construction of roads by the defendant has altered and diverted the natural flow of water from the land of the defendant to the land of the plaintiff; that the water is diverted and flows in a different manner because of the erosion on the roads constructed by the defendant and erosion of dirt placed by the defendant adjacent to its roads; that the banks of said stream on plaintiff's property have been widened and covered by mud and silt which came from defendant's grading; that the condition herein described continues to exist at the time of trial; that the mud and sediment from this erosion flows into the stream described in Item 4 above; that the mud and sediment flows with the aforesaid stream into the

Sutherland v. Hickory Nut Corp.

drainage pipe flowing underneath the home of the plaintiff; that this mud clogs the aforesaid pipe, thereby blocking the drainage thereof;

8. That the erosion and resulting flow of mud and sediment from the land of the defendant to the land of the plaintiff had never before occurred in the eight year period within which the plaintiff has owned the real estate in question; that such erosion and flow of mud had never occurred prior to the construction of the aforementioned roads by the defendant.

9. That as a direct result of the grading and construction of roads by the defendant, the plaintiff, a lower landowner, has been required to receive from the higher land of the defendant mud and sediment, which in the natural condition of the land, would not be carried by the normal flow of waters from the upper to the lower tract.

10. That as a result of the flow of mud and sediment onto the land of the plaintiff, the plaintiff has suffered the following damages:

a. Mud and sediment has backed up in the aforementioned drain pipe and has consequently flowed into the basement of plaintiff's home which was formerly a recreation area.

b. This mud which settled in the basement has caused excessive moisture which, in turn, led to mildew on the inside walls of the home, 'buckling' of wood panels in the rooms above the basement, and requiring the replacement of tiles in the bathrooms; that the plaintiff had never experienced any such problems from the moisture which was concomitant with the natural drainage of the stream prior to the construction of the roads by the defendant.

c. That mud collected on the shoreline where the plaintiff maintains a boat dock making said dock unfit for use; that in an attempt to clear this dock area the plaintiff had to remove several large trees which grew on her property in order to allow drudging equipment to be brought to the area.

d. That mud has accumulated in the area adjacent to plaintiff's home and on her property damaging the landscaping thereof.

9. That as a result of the damage enumerated above, the plaintiff has been damaged up to the time of trial in this matter in the amount of $6,000.00.

The Court concludes as a matter of law that all damage to plaintiff's property herein set forth was directly and proximately caused by dirt, mud and sediment placed in the stream which flows through the property described herein, by the defendant corporation. That in the instant case, the parties did not consent that an issue of permanent damages be submitted to the Court; that, therefore, the damages awarded in the judgment herein represents damages sustained by the plaintiff only to the time of trial herein; that the plaintiff may maintain separate actions for damages sustained subsequent to this judgment.

Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DE-CREED:

1. That the plaintiff have and recover of the defendant SIX THOUSAND AND NO/100 ($6,000.00) DOLLARS plus interest from the day of this judgment.

2. That the defendant pay the costs of this action.

This the 21st day of May, 1974.

HARRY C. MARTIN
Judge Presiding"

From the entry of this judgment, the defendant appealed.

*Hamrick, Bowen & Nanney by James M. Bowen and Louis W. Nanney, Jr., for plaintiff appellee.*

*A. Clyde Tomblin and Robert W. Wolf for defendant appellant.*

CAMPBELL, Judge.

[1] In North Carolina, "[w]e follow the 'Civil-Law Rule,' which recognizes a natural servitude of natural drainage as between adjoining lands, so that the lower owner must accept the surface water which naturally drains onto his land but, on the other hand, the upper owner cannot change the natural drainage so as to increase the natural burden." *Midgett v. Highway Commission*, 260 N.C. 241, 244, 132 S.E. 2d 599, 603 (1963). "While . . . the lower landowner is required to receive

Smith v. House of Kenton Corp.

surface waters from higher lands when they flow naturally therefrom, he is not required to receive from the higher land dirt and rocks, or other materials, which have been piled thereon by the upper landowner and which, in the natural condition of the lands, would not be carried by the normal flow of surface waters from the upper to the lower tracts." *Ayers v. Tomrich Corp.*, 17 N.C. App. 263, 267, 193 S.E. 2d 764, 767 (1972).

[2] The evidence established that the defendant changed the natural drainage of the land by cutting into the mountain and piling the excess mud and dirt on the downhill side of the road. This alteration of the topography of the land caused mud and silt to be washed by surface waters in a manner different than had naturally existed prior to that time. In fact, the mud and silt in the stream was directly traced to the defendant's construction at a time when it was actually causing damage.

In the instant case the evidence was sufficient to support the findings of fact made by the trial judge and those findings of fact support the conclusions of law and the judgment.

Affirmed.

Judges BRITT and VAUGHN concur.