IRENE H. WOODWARD v. DONALD RAY CLOER AND WIFE, PHYLLIS R. CLOER

No. 8327DC294

(Filed 15 May 1984)

**Deeds § 20.7; Waters and Watercourses § 1— drainage easements in restrictive covenants—reasonable use rule inapplicable**
   The trial court erred in applying the reasonable use test for surface water drainage cases set forth in *Pendergrast v. Aiken*, 293 N.C. 201, in an action to enforce a restrictive covenant governing drainage easements in a residential subdivision since there was no need for the trial court to look outside the restrictive covenants to determine plaintiff's right to recover against defendants.

APPEAL by plaintiff from *Bowen, Judge.* Judgment entered 15 October 1982 in District Court, LINCOLN County. Heard in the Court of Appeals 13 February 1984.

This is an action to enforce certain restrictive covenants in a residential subdivision property owner's deed reserving easements on each lot and prohibiting the obstruction or interference with the flow of water through drainage channels located within the easement. The plaintiff, Irene H. Woodward, instituted this proceeding on 10 February 1982 against the defendants, Donald

Ray Cloer and wife, Phyllis R. Cloer, seeking to permanently enjoin the defendants from maintaining the obstruction of the drainage ditch across the front portion of defendants' property, which was located across the street and uphill from plaintiff's property. Plaintiff also sought actual and exemplary damages for injuries caused to her property by flooding occurring after the drainage ditch was obstructed by the defendants.

The defendants filed an answer admitting the filling of the drainage ditch, partially in 1976 and then completely in May, 1981, for the purpose of beautifying their property; denying that the water entering the plaintiff's property and causing flood damage thereon was the result of the defendants' actions; and alleging that a drainage ditch previously existing across the front of plaintiff's property was filled in 1974; that its closing was the cause of plaintiff's flooding and that plaintiff was obligated to reopen that alleged drainage ditch.

The action was tried without a jury before the District Court Judge. Prior to the trial, the parties entered a stipulation concerning the plat of the subdivision in which both plaintiff's and defendants' property is located, the deeds by which both parties acquired title to their real property, and the restrictive covenants which affect the subdivision and both plaintiff's and defendants' properties. The court then conducted a jury view of the plaintiff's and defendants' properties, and the area of the subdivision involved in the action.

Both parties presented evidence relative to the situation and history of their respective properties, the defendants' obstruction of the drainage ditch and the plaintiff's subsequent flood damage. Following arguments by counsel, the court ruled that the law applicable to the case was the reasonable use test set forth in *Pendergrast v. Aiken,* 293 N.C. 201, 236 S.E. 2d 787 (1977). The court then made findings of fact and conclusions of law and denied the relief sought by the plaintiff. From the entry of judgment in favor of defendants, plaintiff appeals.

*Wilson & Lafferty, P.A., by John O. Lafferty, Jr., for plaintiff appellant.*

*Jonas, Jonas & Rhyne, by Harvey A. Jonas, Jr., for defendant appellees.*

JOHNSON, Judge.

The question dispositive of this appeal is whether the trial court erred in applying the reasonable use test of *Pendergrast v. Aiken*, 293 N.C. 201, 236 S.E. 2d 787 (1977) to the case under discussion. We conclude that application of the *Pendergrast* rule was error and therefore remand the case to the trial court so that the evidence of the parties may be considered in its true legal light. *See A.M.E. Zion Church v. Union Chapel A.M.E. Zion Church*, 64 N.C. App. 391, 308 S.E. 2d 73 (1983), *disc. rev. denied*, 310 N.C. 308, 312 S.E. 2d 649 (1984) (bench trial; new trial appropriate where evidence heard and factual findings made under misapprehension of the controlling law).

In the trial of this action it was undisputed that all lands involved are located in the Lincoln Forest Subdivision and are subject to certain "Protective Covenants" dated 24 January 1966, and recorded in the Lincoln County Public Registry. It is also undisputed that the "protective" or "restrictive" covenants contain reservations for certain easements over each lot and prohibitions against any obstruction or interference with the flow of water through drainage channels within the easement, and also contain provisions providing for the enforcement of such "Protective Covenants."

The undisputed evidence also showed that a drainage ditch existed along the easement in the front of defendants' lot until 1976 when defendants filled the ditch with dirt, leaving a grassy swag 14 inches deep, and that defendants did substantial additional filling of the ditch in May, 1981. Further, that the purpose behind defendants' filling of the ditch within the easement was to improve the aesthetic appearance of their property, by improving the growth of grass in that area and making grass mowing there more efficient.

Plaintiff offered evidence which tended to show that she had never had any flooding or water damage to her property prior to May, 1981 and that after the second filling of the ditch in May, 1981, she received a heavy volume of water and mud; that her carport and basement were flooded; that she has continued to suffer similar water and mud damage since that time; and that as a result of such flooding her home has been damaged.

**Woodward v. Cloer**

Defendants did not offer evidence contradicting plaintiff's evidence of flooding or damage. Rather, they offered evidence which tended to show that prior to 1974, a drainage ditch had existed along the front portion of plaintiff's lot within the easement and that such ditch was not filled in. Plaintiff's evidence tended to show that no such ditch had ever existed.

Defendants offered further evidence which tended to show that the flow of water coming down the road separating their upper property from plaintiff's lower property remained continuously on defendants' side of the road and did not cross over the road onto plaintiff's property. Plaintiff offered evidence tending to show that the flow of water did in fact cross the road at the point where defendants' drive entered the road, and that the flow then continued down plaintiff's drive and into her carport and basement.

Other evidence showed that the parties had discussed the possibility of water damage to plaintiff's property if the defendants' drainage ditch were to be filled in, but that despite plaintiff's opposition, the defendants did not believe such damage would occur and proceeded to fill in the ditch.

At the close of the evidence, the trial court ruled that the law applicable to plaintiff's claim was set forth in *Pendergrast v. Aiken, supra.* In this ruling, the court erred. We find no indication in the *Pendergrast* opinion that the Supreme Court intended to supersede the vested property right of a subdivision lot owner to have drainage easements maintained with a rule of "reasonable use." As the *Pendergrast* court explicitly recognized, its adoption of the reasonable use rule in surface water drainage cases was "an act of clarification—not innovation," 293 N.C. at 218, 236 S.E. 2d at 798, in an effort to bring consistency to an area of the law theretofore subject to piecemeal modifications dictated by time and circumstance. *Ibid.* The choice made by the *Pendergrast* court to formally adopt "reasonable use" as the test for analyzing drainage problems must be considered to be purely doctrinal. Accordingly, it is applicable to determine the rights and duties of landowners in the absence of another source for these reciprocal rights and obligations. The rights and duties plaintiff seeks to enforce were expressly contained in the restrictive covenants to which all the subdivision lot owners were subject. Therefore,

there was no need for the trial court to look outside the restrictive covenants to determine plaintiff's right to recover against defendants.

Support for this interpretation of the limited scope of the *Pendergrast* rule may be found in the nature of the problem before the court and in the text of the opinion itself. *See also* Note, 56 N.C. L. Rev. 1118 (1978) (inquiry shifted from *concepts* of property law to *principles* of tort law) and Note, 14 Wake Forest L. Rev. 866 (1978). In *Pendergrast,* a downstream landowner placed a culvert in a drainage ditch running through his property and then filled the ditch and property with dirt. As a result, the stream that formerly flowed through the ditch backed up several times during rainfalls and flooded a building on plaintiff's land. The plaintiff sued for damages, allegedly caused by the nuisance on defendant's property. Plaintiff alleged that under the "civil law rule" any interference with the natural flow of surface waters was a nuisance. The defendant, relying on the "reasonable use rule," countered that unless his conduct was unreasonable, he should not be subject to liability for making improvements on his property. The trial court's instruction to the jury contained elements of both rules.

Three basic doctrines relative to the disposition of surface water have been developed by the courts in the various states: the civil law rule, the common enemy rule, and the reasonable use rule. *Pendergrast v. Aiken, supra* at 207, 236 S.E. 2d at 791. *See also* Note, Disposition of Diffused Surface Waters in North Carolina, 47 N.C. L. Rev. 205, 206-207 (1968). Although the civil law rule, which is analytically dependent on property law concepts, prevailed at the time suit was initiated, the Supreme Court had traditionally adhered to a "policy of flexible application" of the civil law rule. 293 N.C. at 212, 236 S.E. 2d at 793. After reviewing a number of its prior decisions, the court concluded that it had traditionally included elements of "reasonable use" in its application of the civil law rule in an effort to accommodate change in the social and economic structure of society; an accommodation not possible under that rule when strictly applied. The court also noted that this "flexible" application of the civil law rule had led to numerous result-oriented decisions and "unpredictable disruptions" in the law of surface water drainage in the court's quest to accommodate changing social needs. 293 N.C. at

216, 236 S.E. 2d at 796. Continuing in its analysis, the court stated:

> In sum, we think the reasonable use rule is more in line with the realities of modern life and that consistency, fairness and justice are better served through the flexibility afforded by that rule. [Par.] Accordingly, we now formally adopt the rule of reasonable use with respect to *surface water drainage.* (Emphasis original.)

*Id.* at 216, 236 S.E. 2d at 796.

In a subsequent decision, the court characterized its holding as follows:

> Specifically, the doctrine of reasonable use adopted in *Pendergrast* defines the extent to which a private landowner may interfere with the flow of surface water on the property of another. This doctrine presupposes that all private landowners must accept a reasonable amount of interference with the flow of surface water by other private landowners if a fair and economical allocation of water resources is to be achieved. The conclusion reached in *Pendergrast* is that a rule of reasonable use with respect to water rights is the best way to promote the orderly utilization of water resources by private land owners.

*Board of Transportation v. Warehouse Corp.,* 300 N.C. 700, 705, 268 S.E. 2d 180, 184 (1980). Significantly, the court refused to apply the reasonable use test in that case, concluding that the "principle of reasonable use articulated in *Pendergrast* is superseded by the constitutional mandate that '[w]hen private property is taken for public use, just compensation must be paid.'" (Citation omitted.) *Id.* at 706, 268 S.E. 2d at 184.

Similarly, we conclude that the *rights* and *duties* established by the restrictive covenants governing the subdivision supersede the *principle or doctrine* of reasonable use articulated in *Pendergrast.* Here, the developer of the subdivision, by inclusion of the restrictive covenants in the plan of development, has already determined that the "best way to promote the orderly utilization of water resources" within the private subdivision is through the maintenance of unobstructed drainage channels within easements reserved on each lot. It is well established that:

[W]hen an owner of a tract of land subdivides it and conveys distinct parcels to separate grantees, imposing common restrictions upon the use of each parcel pursuant to a general plan of development, the restrictions may be enforced by any grantee against any other grantee. Moreover, the right to enforce may be exercised by subsequent grantees against any purchaser who takes land in the tract with notice of the restrictions. A purchaser has such notice whenever the restrictions appear in a deed or in any other instrument in his record chain of title.

*Hawthorne v. Realty Syndicate, Inc.*, 300 N.C. 660, 665, 268 S.E. 2d 494, 497 (1980). Furthermore, purchasers in a subdivision acquire the right to have existing easements remain open, and such rights cannot be extinguished or revoked except by agreement. *Cleveland Realty Company v. Hobbs*, 261 N.C. 414, 135 S.E. 2d 30 (1964); *Land Corporation v. Styron*, 7 N.C. App. 25, 171 S.E. 2d 215 (1969). *See also Johnson v. Winston-Salem*, 239 N.C. 697, 81 S.E. 2d 153 (1954) (drainage easements). Mrs. Woodward, the plaintiff herein, has not agreed to the obstruction of the drainage ditch by the defendants and, upon a proper evidentiary showing, should be entitled to relief from the obstruction of such drainage easements as are mandated by the restrictive covenants.

Although the *Pendergrast* decision contains many broad statements regarding the future applicability of the reasonable use test to all surface water drainage problems, it is clear from the text that the court was referring to drainage rights arising under the common law tort doctrine of nuisance.

*Analytically, a cause of action for unreasonable interference with the flow of surface water causing substantial damage is a private nuisance action,* with liability arising where the conduct of the landowner making the alterations in the flow of surface water is either (1) intentional and unreasonable or (2) negligent, reckless or in the course of an abnormally dangerous activity. (Citations omitted.)

\*　　\*　　\*

Regardless of the category into which the defendant's actions fall, the reasonable use rule explicitly, as in the case of intentional acts, or implicitly, as in the case of negligent acts, re-

quires a finding that the conduct of the defendant was unreasonable. *This is the essential inquiry in any nuisance action.* (Citations omitted.) (Emphasis added.)

293 N.C. at 216, 217, 236 S.E. 2d at 796, 797.

Analytically, plaintiff Woodward's cause of action is a private action to enforce a restrictive covenant governing drainage easements in a residential subdivision. There is no indication in the *Pendergrast* opinion that the court meant to apply the reasonable use rule to surface water drainage problems *not* arising under a nuisance theory. We are of the opinion that the *Pendergrast* court rejected only the civil law rule's dependency on *"property law concepts* such as rights, servitudes, easements, and so forth," 293 N.C. at 215, 236 S.E. 2d at 795, as a *method for analyzing* surface water drainage problems, without thereby rejecting the enforceability of *actual property rights* embodied in restrictive covenants requiring maintenance of easements with drainage channels such as those at issue here. However inflexible the reciprocal rights and duties under the parties' restrictive covenants may appear, those rights are incident to real property ownership in the Lincoln Forest Subdivision and are not, therefore, subject to the "reasonable use" rule articulated in *Pendergrast v. Aiken, supra.* It is evident that the goals of "consistency, fairness and justice," *Pendergrast, supra* at 216, 236 S.E. 2d at 796, will be best served in this case through the judicial enforcement of the rights and duties arising under the Lincoln Forest Subdivision's "Protective Covenants."

In conclusion, the rule of *Pendergrast* is not applicable in an action between private landowners in a residential subdivision subject to restrictive covenants governing surface water drainage rights. Accordingly, the judgment of the trial court, entered under that theory, must be reversed and the matter remanded to the District Court for a new trial so that the evidence regarding the restrictive covenant and defendant's actions may be considered in its true legal light.

New trial.

Chief Judge VAUGHN and Judge WEBB concur.