PABLO G. CASADO AND WIFE, CAROL CASADO v. MELAS CORPORATION, MELLOTT CONTRACTORS, INC., AND MELLOTT TRUCKING AND SUPPLY CO., INC.

No. 8315SC1003

(Filed 17 July 1984)

1. **Negligence § 10— concurring causes of injury—apportionment of damages not required**

Where plaintiffs contended that acts of defendant trucking company resulted in formation of a "delta" on the lake which abutted their property and a portion of which had been conveyed to them, the trial court erred in requiring plaintiffs to establish the degree to which the formation of the "delta" was attributable to defendant, since, where the damage complained of is the indivisible result of several causes, full recovery by a plaintiff does not depend on his ability to apportion the damages; rather, plaintiff needs only to show that the negligence of one defendant was a proximate cause of some of the damage.

2. **Waters and Watercourses § 1; Damages § 5— damages from water runoff—impermanent injury—measure of damages**

Where plaintiffs contended that the construction of roads in their subdivision by defendant trucking company resulted in siltation and formation of a

"delta" on the lake which abutted their property and a portion of which had been conveyed to them, the trial court erred in determining that the amount of damage to plaintiffs' property was the diminution in its market value, since the "delta" created by runoff was continuing to accumulate, and it was therefore an impermanent and continuing injury for the purpose of measuring damages.

APPEAL by plaintiffs from *Barnette, Judge.* Judgment entered 15 July 1983 in Superior Court, ORANGE County. Heard in the Court of Appeals 7 June 1984.

This is a civil action in which plaintiffs seek compensatory and punitive damages and injunctive relief for damages to their property allegedly resulting from the actions of defendants.

The essential facts of this case are not in dispute and are accurately summarized in the trial court's written judgment:

2. Plaintiffs are owners of Lot 8, Section III of Wolf's Pond Subdivision. The property of the plaintiffs includes a portion of Wolf's Pond surface and the lake bed beneath the surface. Wolf's Pond is a small lake with a surface area of approximately five (5) acres located in the Wolf's Pond Subdivision.

3. Melas Corporation, a defendant herein, was the grantor of the property now owned by the plaintiffs and Melas Corporation sold the other lots located in the Subdivision.

4. The activities of Mellott Trucking & Supply Company, Inc. were undertaken at the direction of and for the benefit of Melas Corporation.

5. Melas Corporation is no longer an active corporation and its only assets consist of the land underlying the roads in the Wolf's Pond Subdivision and the lake bed under the surface of Wolf's Pond.

6. Defendant Mellott Trucking and Supply Co., Inc. is a corporation organized and existing under the laws of the State of North Carolina and the aforesaid defendant performed the road grading and paving for the Wolf's Pond Subdivision.

7. Plaintiffs contracted with Melas Corporation for the purchase of Lot 8, Section III of Wolf's Pond Subdivision in January of 1973.

8. At the time the plaintiffs purchased their lot in Wolf's Pond Subdivision, the following conditions existed and were observed by the plaintiffs:

A. The plaintiffs' lot is steep and traversed by two natural gulleys or ravines into which higher elevations of Wolf's Pond Subdivision drain.

B. The roads for Phase III of Wolf's Pond were in place but had not been paved.

C. A culvert ran through the base of Wolf's Court at the northeast corner of plaintiffs' lot.

D. The lake was under construction and was not filled; the ground which would be under water when the lake was filled was firm.

9. Plaintiffs commenced construction of a residence on Lot 8 of Wolf's Pond Subdivision in January of 1974 and occupied the residence in August of 1974.

10. The lake area filled with water during the spring and summer of 1974.

11. Plaintiffs used the lake during the spring and summer of 1974 and did not notice any substantial sedimentation or siltation.

12. Defendant commenced clearing and construction of roads for Phases IV and V of Wolf's Pond Subdivision during the winter of 1974 and the construction operation lasted until the fall of 1975. The areas cleared were "uphill" from the plaintiffs' lot.

13. A portion of the construction process consisted of grading and introduction of "Chapel Hill gravel" as a road base. The road base was "primed" with oil which was designed to hold the base in place until approval for paving was obtained.

14. During the spring of 1975, the plaintiffs noticed that "Chapel Hill gravel" began moving onto plaintiffs' property each time it rained.

15. On July 2, 1975, the plaintiffs went to Mexico and upon their return on August 8, 1975, they noticed that "Chapel Hill gravel" was at the lake in the area where the "Delta" which is the subject of this action has formed.

16. Shortly after plaintiffs' return from Mexico in August of 1975, following a heavy rain, plaintiffs noticed that the culvert at the northeast corner of their property was obstructed and that water was flowing over Wolf's Court.

17. The defendant was contacted and it was discovered that a third party, unknown, had blocked the northern terminus of the culvert with a plywood board.

18. The overflow caused by the blockage of the culvert "washed away" the southern bank of Wolf's Court to a depth of approximately four (4) feet. The wash from the overflow constitutes a portion of the "Delta."

19. Subsequent to construction of the roadways for Phases IV and V, the defendant unsuccessfully attempted to plant erosion impeding vegetation on the roadside banks.

20. Defendant was informed by the Orange County, North Carolina Erosion Control Office that it was in violation of Erosion Control Statutes.

. . .

22. The "Delta" is composed of leaves, sticks, "Chapel Hill gravel," and other debris.

23. The plaintiffs obtained an estimate in the sum of $8,000.00 (in 1982) as the cost of a possible alternative method for use of the area where the lake bottom is heavily silted and the "Delta" exists.

24. The plaintiffs' property continues to be subject to siltation.

25. The plaintiffs offered evidence that a substantial amount of the siltation material resulted from the activities

of the defendant; however, the plaintiff did not quantify the percentage of siltation resulting from the defendant's activities versus that which naturally occurred or was the result of the culvert blockage and overflow.

26. Removal of the delta would be impractical and could not be accomplished without the incurrence of exorbitant costs.

This action was first brought against all named defendants in 1978. In 1980, the parties executed a Stipulation of Dismissal which resulted in dismissal without prejudice. In February 1981, the action was reinstituted with the same parties named as in the 1978 action. Prior to trial, the parties stipulated that defendant Melas Corporation was defunct and that defendant Mellott Contractors, Inc., had not participated in the work that gave rise to the action.

The matter was tried without a jury on 18 April 1983. On 15 July 1983, the court entered judgment which included the facts quoted above and the following pertinent conclusions:

2. That the defendant's violation of Erosion Control Statutes constitutes negligence on the part of the defendant which proximately resulted in some damage to the plaintiffs.

3. That the "Delta" is a permanent condition and the burden is upon the plaintiffs to establish the degree to which the formation of the "Delta" is attributable to the acts of the defendant as opposed to the forces of nature or the acts of third parties.

4. That the proper measure of damages is diminution in the value of the plaintiffs' property.

5. That no evidence as to diminution in value of plaintiffs' property having been presented, the plaintiffs are entitled to recover nominal damages.

6. That the plaintiffs are entitled to recover attorney fees in an amount to be set by the Court.

Accordingly, the court awarded plaintiffs nominal damages of $1.00 as well as attorney fees. Based on the pretrial stipulations,

the action was dismissed as to defendants Melas Corporation and Mellott Contractors, Inc. Plaintiffs appealed.

*Winston, Blue and Rooks, by J. William Blue, Jr., for plaintiff appellants.*

*No brief for defendant appellee Mellott Trucking and Supply Co., Inc.*

EAGLES, Judge.

We note at the outset that the trial court's conclusions that defendant was negligent and that its negligence proximately resulted in some damage to plaintiffs' property are not challenged in this appeal. Here, plaintiffs appealed from a judgment in their favor because it awarded only nominal damages. As this Court recently held, a party who prevails at trial may appeal from a judgment that is only partly in its favor or is less favorable than the party thinks it should be. *New Hanover Co. v. Burton,* 65 N.C. App. 544, 310 S.E. 2d 72 (1983); G.S. 1-271. *See also McCulloch v. R.R. Co.,* 146 N.C. 316, 59 S.E. 882 (1907).

[1] Plaintiffs contend first that the trial court erred in concluding that they were required to establish what portion of the damage complained of was attributable to the acts of defendant as opposed to other causes. We agree with plaintiffs.

Where the damage complained of is the indivisible result of several causes, full recovery by a plaintiff does not depend on his ability to apportion the damages; plaintiff needs only to show that the negligence of one defendant was a proximate cause of some of the damage complained of. *McEachern v. Miller,* 268 N.C. 591, 151 S.E. 2d 209 (1966); *Hester v. Miller,* 41 N.C. App. 509, 255 S.E. 2d 318, *rev. denied,* 298 N.C. 296, 259 S.E. 2d 913 (1979). In order to hold defendant liable for the entire injury, it is not necessary that his negligence be the sole proximate cause of the injury, or the last act of negligence. *Batts v. Faggart,* 260 N.C. 641, 133 S.E. 2d 504 (1963); *Hester v. Miller, supra. See generally,* Prosser, Law of Torts, *Apportionment of Damages* § 52 (4th ed. 1971); 9 N.C. Index 3d, *Negligence* § 10 (1977 and Supp. 1983). Here, it was error for the trial court to require plaintiffs "to establish the degree to which the formation of the 'Delta' is attributable to the acts of the defendant. . . ."

[2] Plaintiffs next assign error to the trial court's ruling that the proper method for determining the amount of damage to plaintiffs' property was the diminution in its market value. Plaintiffs argue that, because the damage was not permanent, diminution in value was not the proper measure of damages. We agree.

The trial court's findings of fact indicate that the negligence of defendant was still operating at the time judgment was entered and that the resulting damage to plaintiff's property was continuing and was still accumulating. Specifically, the court found that "plaintiffs' property continues to be subject to siltation." Nevertheless, the court concluded that the damage was "a permanent condition" and that the correct measure of damages was the diminution in value of plaintiffs' property.

While the "Delta" created by the runoff may well be "a permanent condition," the fact that it is continuing to accumulate makes it an impermanent and continuing injury for the purpose of measuring damages. *Phillips v. Chesson*, 231 N.C. 566, 58 S.E. 2d 343 (1950), is relevant here. It involved a suit between two private landowners where the defendant landowner had diverted the natural flow of surface water, causing it to flow onto plaintiff's property. The diverted water carried clay and mud which were deposited and accumulated on plaintiff's land. The periodic flooding also caused extensive damage to buildings on the property. In his complaint, plaintiff alleged damages of a recurring nature. The Supreme Court, finding that the evidence supported plaintiff's allegations, nevertheless ordered a new trial because the court erroneously instructed the jury to compute any damages awarded on the basis of diminution in value of plaintiff's property. We quote from Justice Seawell's opinion:

> The impermanent nature of the condition from which the intermittent or recurrent damage arises is recognized in the constitution of the case, since the plaintiff has concomitantly with his prayer for damages invoked injunctive relief for its abatement. The cause of the recurring damage, then, is one which may be removed by the voluntary action of the defendant, or abated by court action, if that should be adjudged appropriate. Plaintiff's remedy in a proceeding of this sort, between private parties, is by successive suits brought from time to time against the author of the nuisance as long as the

noxious condition is maintained, in which he may recover past damages down to the time of the trial . . . not including subjects of prior adjudication. In this way it has been said, . . . the defendant's willingness to abate or remove the cause of damage may be stimulated when repeatedly mulcted in damages by reason of its continued maintenance.

In contrast, permanent damages, as the term is used in the law, are given in one award of entire damages on the theory that all damage flows from the original injury, recognized as permanent in character; and such award includes compensation for all damage, however intermittent, or recurring, past, present and prospective, naturally flowing from and proximately caused by the original injury.

. . .

The great weight of authority where the point has been squarely presented *sine nubibus* clearly rejects the diminution of market value as neither accurate, convenient nor just where, as here, temporary damages only will be allowed, where the cause of the injury is impermanent in the sense that it may be removed by the offender voluntarily or abated by equitable proceedings which the plaintiff has here invoked.

*Id.* at 569-71, 58 S.E. 2d at 346-48 (citations omitted). *See also Sutherland v. Hickory Nut Co.*, 23 N.C. App. 434, 209 S.E. 2d 301 (1974) (water and sediment damage to plaintiff's property resulting from defendant's upstream land disturbance ruled impermanent as a matter of law by trial court; damages awarded accordingly. Affirmed by Court of Appeals). *See generally* 25 C.J.S., *Damages* § 84 (1966); 12 N.C. Index 3d, *Trespass* § 9 (1978).

Here, as in *Phillips, supra,* plaintiffs have alleged damages of a continuing and recurring nature and seek injunctive relief as well as damages. While the general rule for assessing damage to real property is diminution in market value, that measure is not appropriate where, as here, the damage complained of is "impermanent." In a case involving damages of an "impermanent" nature, "various other rules are applied, such as . . . reasonable costs of replacement or repair." *Phillips v. Chesson, supra* at 571,

58 S.E. 2d at 348. Clearly, the ruling by the trial court that the proper measure of damages was diminution in value was error.

Plaintiffs' third and last contention on appeal challenges the trial court's ruling that plaintiffs presented no evidence of diminution in the value of their property. Since we have determined that diminution in the value of the property is not the proper measure of damages here, we need not address this contention.

With the exception of the portions relating to the measure of damages, the judgment is affirmed. The portions relating to the measure of damages are vacated, and the cause is remanded for further proceedings on the issue of damages.

Affirmed in part, vacated in part, and remanded.

Judges ARNOLD and WHICHARD concur.