LAKEVIEW CONDOMINIUM ASSOCIATION, an unincorporated association; LYNNE GILBERT; ROSEMARY CLEAR; PAM PALLADINO; THOMAS E. ROGERS; and MALLORY HICKEY, in their capacity as the LAKEVIEW CONDOMINIUM ASSOCIATION BOARD OF DIRECTORS; and JOAN FROST, Plaintiff,
v.
THE VILLAGE OF PINEHURST, a municipal corporation, Defendant.
No. COA06-1001
Court of Appeals of North Carolina.
Filed August 7, 2007
This case not for publication
Van Camp, Meacham & Newman, PLLC, by Thomas M. Van Camp, Esq., and Evelyn J. Mackrella, Esq., for plaintiffs-appellees.
Cranfill, Sumner & Hartzog, L.L.P., by Norwood P. Blanchard, III, for defendant-appellant.
STEELMAN, Judge.
Where plaintiff landowner alleged that defendant municipality negligently maintained culverts and drainage pipes in defendant's right-of-way, such that plaintiff's property was damaged, the reasonable use doctrine and the doctrine of riparian rights did not apply. The appropriate measure of damages caused to plaintiff's property was the reasonable cost of repair, not the diminution of the property's value.

Factual Background:
Lake view Condominium Association ("plaintiff"), an association of property owners in Pinehurst, North Carolina, owned a pond adjacent to Lake Pinehurst, into which the storm water from a culvert and a drainage pipe emptied from the right-of-way maintained by the Village of Pinehurst ("defendant"). On two occasions in April 2003, large deposits of sand washed into plaintiff's pond from the culvert and drainage pipes. After the rains in April, plaintiff contacted Roto-Rooter to remove the sand deposit from the pond and the drainage pipe. Roto-Rooter removed seven loads of sand per day for two weeks, at a cost to plaintiff of $16,480.85. In August 2003, plaintiff had Roto-Rooter remove sand from its pond again, at a cost of $9,303.93. Plaintiff alleged that its total cost of repair to the pond, including the bills from Roto-Rooter, was $50,890.53.
On 26 May 2004, plaintiff filed this action against defendant, seeking monetary damages based upon claims of negligence, trespass, and nuisance. The negligence claim asserted that defendant was negligent in its maintenance of the storm water drainage system, causing sand to accumulate in plaintiff's pond.
On 14 November 2005, plaintiff took a voluntary dismissal of its claims for trespass and nuisance.
On 13 January 2006, defendants filed a motion for summary judgment, which was denied on 23 January 2006. The case went to trial before a jury at the 23 January 2006 session of civil Superior Court for Moore County.
On 26 January 2006, the jury returned a verdict finding that defendant was negligent in causing damages to plaintiff, and awarding damages in the amount of $40,000.00. In its judgment, the trial court awarded costs and attorney's fees to plaintiff pursuant to Rule 37 of the Rules of Civil Procedure based upon defendant's refusal to admit certain facts in response to plaintiff's requests for admission. The trial court denied defendant's motions for judgment notwithstanding the verdict, for a new trial, and for attorney's fees based upon alleged discovery violations by plaintiff.
From the judgment and the two orders entered by the trial court, defendant appeals.

I: Directed Verdict and Judgment Notwithstanding the Verdict
In its first argument, defendant contends that the trial court erred by denying its motions for directed verdict and judgment notwithstanding the verdict. We disagree.
"A motion for directed verdict tests the legal sufficiency of the evidence to go to the jury[.]" Munie v. Tangle Oaks Corp., 109 N.C. App. 336, 341, 427 S.E.2d 149, 152 (1993) (citing Goodwin v. Investors Life Insurance Co. of North America, 332 N.C. 326, 329, 419 S.E.2d 766, 767 (1992)). "A motion for judgment notwithstanding the verdict is essentially a renewal of an earlier motion for a directed verdict[,]" and the standards of review are the same. Drain v. United Services Life Ins. Co., 85 N.C. App.174, 176, 354 S.E.2d 269, 272 (1987) (citing Dickinson v. Pake, 284 N.C. 576, 201 S.E.2d 897 (1974)). A motion for directed verdict and for judgment notwithstanding the verdict "should be granted only where the evidence, construed in the light most favorable to plaintiff, is insufficient to support a verdict for the plaintiff." Maintenance Equipment Co. v. Godley Builders, 107 N.C. App. 343, 348, 420 S.E.2d 199, 201-02 (1992). "In ruling on the motion the judge must consider the evidence in the light most favorable to the non-moving party and give him the benefit of every reasonable inference to be drawn in his favor." Id.
The standard is high for the moving party as the motion should be denied if there is more than a scintilla of evidence to support the plaintiff's prima facie case. . . . The evidence supporting the plaintiff's claims must be taken as true, and all contradictions, conflicts, and inconsistencies must be resolved in the plaintiff's favor, giving the plaintiff the benefit of every reasonable inference.
Alexander v. Alexander, 152 N.C. App. 169, 170-71, 567 S.E.2d 211, 213 (2002) (quotation omitted). Because the judgment notwithstanding the verdict is essentially a renewal of the motion for directed verdict, we need only review the court's ruling as to defendant's motion for judgment notwithstanding the verdict. Zubaidi v. Earl L. Pickett Enters., Inc., 164 N.C. App. 107, 119, 595 S.E.2d 190, 197 (2004).
In the instant case, defendant's written motion for judgment notwithstanding the verdict asserted the following:
1. The Village cannot be held responsible for any storm drainage problems (including sedimentation) originating outside of its property. The Village is only required to refrain from unreasonably altering or augmenting the flow of surface water running across its property, and is not required to prevent or remedy any defective or harmful conditions (including sedimentation) existing on land which it did not possess or control.
2. Plaintiffs cannot recover for damages or repairs to any easement or other property which they do not own.
3. Diminution of value, not repair cost, is the proper measure of damages. Plaintiffs failed to offer any evidence of diminution of value. (R248)
In addition to these three assertions in defendant's motion, defendant makes additional arguments on appeal. Defendant cannot create new grounds for his motion on appeal, having "failed to raise [the] issue[s] before the trial court[.]" Crist v. Crist, 145 N.C. App. 418, 423, 550 S.E.2d 260, 264 (2001). Therefore, we review the merits of defendant's motion as to the three contentions raised in defendant's motion for judgment notwithstanding the verdict before the trial court.

III: Negligence
In its first argument, defendant contends that plaintiff's negligence claim must fail because plaintiff did not show any duty that was breached by defendant. We disagree.
Defendant cites White Estates, Inc., v. Highlands Cove, L.L.C., 146 N.C. App. 449, 553 S.E.2d 431 (2001), and Huberth v. Holly, 120 N.C. App. 348, 462 S.E.2d 239 (1995), to specifically contend that no duty existed because the sedimentation "originat[ed] outside of [defendant's] property." Defendant argues that it can be held liable "only if the defendant's acts or omissions caused sediment to be in the water, not merely because sediment-laden water flowed through the defendant's property." (emphasis added) We disagree, and find that the cases cited by defendant are not applicable to the instant case.
"The first prerequisite for recovery of damages for injury by negligence is the existence of a legal duty, owed by the defendant to the plaintiff, to use due care." Meyer v. McCarley & Co., 288 N.C. 62, 68, 215 S.E.2d 583, 587 (1975). "The common-law standard of care is a generalized one of 'due care' on the part of the defendant. The standard of due care is always the conduct of a reasonably prudent person under the circumstances." Collingwood v. G.E. Real Estate Equities, 324 N.C. 63, 68, 376 S.E.2d 425, 428 (1989).
The duty of care with regard to private property owners as to damage caused by surface water is governed by the reasonable use doctrine, as set forth in Pendergrast v. Aiken, 293 N.C. 201, 236 S.E.2d 787 (1977):
Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface water is altered thereby and causes some harm to others, but liability is incurred when his harmful interference with
the flow of surface waters is unreasonable and causes substantial damage.
Id. at 216, 236 S.E.2d at 796.
The Court in Pendergrast further stated:
Analytically, a cause of action for unreasonable interference with the flow of surface water causing substantial damage is a private nuisance action, with liability arising where the conduct of the landowner making the alterations in the flow of surface water is either (1) intentional and unreasonable or (2) negligent, reckless or in the course of an abnormally dangerous activity.
Id.
The North Carolina Supreme Court and this Court have limited the application of Pendergrast. See Board of Transportation v. Warehouse Corp., 300 N.C. 700, 268 S.E.2d 180 (1980); Woodward v. Cloer, 68 N.C. App. 331, 334, 315 S.E.2d 335, 338 (1984). In Warehouse Corp., the Court held that the doctrine of reasonable use was inapplicable in an eminent domain action, reasoning that:

Pendergrast . . . was a dispute between private landowners[.] . . . In the instant case, however, the interference with the drainage of surface waters is attributed not to a private landowner but to an entity possessing the power to appropriate private property for public use. Where the interference with surface waters is effected by such an entity, the principle of reasonable use articulated in Pendergrast is superseded[.]
Id. at 705-706, 268 S.E.2d at 183-184. Furthermore, in Woodward, this Court stated, "[t]here is no indication in the Pendergrast opinion that the court meant to apply the reasonable use rule to surface water drainage problems not arising under a nuisance theory." Id. at 338, 315 S.E.2d at 338-39. We extend the logic of Warehouse Corp. and Woodward to the instant case, and conclude that although the doctrine of reasonable use may be instructive with regard to duty of care in a negligence claim against a municipality, it is not controlling.
Pendergrast does not preclude a cause of action for negligence against a municipality for damages caused by drainage of surface water. In fact,Hotels, Inc. v. Raleigh, 268 N.C. 535, 151 S.E.2d 35 (1966), specifically holds that "a municipality . . . may become liable for injury caused by its negligence in the control of the water[.]" Id. at 536, 151 S.E.2d at 37; see also Hooper v. Wilmington, 42 N.C. App. 548, 257 S.E.2d 142 (1979).
With regard to negligence suits against municipalities in situations of surface water damage, the Court in Hotels, Inc. stated:
Where a city adopts a natural watercourse for sewerage or drainage purposes, it has the duty to keep it in proper condition and free from obstructions, and it is liable for damage resulting from neglect therein.
Id. at 536, 151 S.E.2d at 37. The Court further stated that when a municipal corporation assumes the control and management of a drain, "it is bound to use reasonable diligence and care to keep such sewer or drain in good repair, and is liable in damages to any property owner injured by its negligence in this respect." Id. at 537, 151 S.E.2d at 37. The duty of maintaining drains in good repair includes the following:
[T]he obligation to keep them free of obstruction, and a municipality is liable for negligence in its exercise to any person injured by such negligence, whether the damages result from its failure to use reasonable diligence to keep its sewers and drains from becoming clogged,  as where the municipal corporation fails in its duty to exercise a reasonable degree of watchfulness to ascertain the condition of sewers and drains from time to time so as to prevent them from becoming obstructed.
Id. at 537, 151 S.E.2d at 37.
In the instant case, plaintiff presented evidence that defendant had a duty to maintain the drainage pipes and ditches, and that defendant breached this duty. Plaintiff specifically contended at trial that defendant breached its duty of care in failing to install more rip-rap breaks in the ditches, failing to circle the drainage inlets with rip-rap, and failing to plant sufficient vegetative cover in the ditches. Plaintiff's evidence tended to prove that these were the primary methods of preventing sand and sediment damage. Further, plaintiff's evidence showed that defendant accepted the dedication of streets and of the right-of way in question, in an ordinance filed in 1985, which stated:
Acceptance of dedication of these rights-of-way will remove much legal confusion among the public as to the responsibility for maintenance of streets and rights-of-way within the Village of Pinehurst, and allow the village to pursue drainage improvements in such rights-of-way[.]
Both the Director and Assistant Director of the Public Works Department at the Village of Pinehurst testified that the department had the duty "to inspect, maintain, repair, deal with issues within the Village of Pinehurst right-of-ways[,]" including maintenance of culverts, drains and ditches. The director further testified that, before April 2003, public works did not have "policies and procedures . . . to perform routine inspections[,]" to make certain "that there was no sand or sediment erosion[.]"
Defendant contends on appeal that because defendant did not "alter or interfere with the flow of surface water," it did not violate the reasonable use doctrine. However, in order for there to be a finding of negligence, a defendant is not required to"alter or interfere with the flow of surface water." See Dunning v. Warehouse Co., 272 N.C. 723, 725, 158 S.E.2d 893, 895 (1968) (stating that "[t]he breach of duty may be by negligent act or a negligent failure to act"). We thus find defendant's argument unpersuasive.
Defendant further contends that plaintiff's negligence action must fail because "liability may only arise where the municipality has [actual] or constructive notice of the existence of an obstruction or defect and fails to act." Ward v. City of Charlotte, 48 N.C. App. 463, 467, 269 S.E.2d 663, 666 (1980). Defendant argues that it had no notice in this case. However, the evidence tended to prove that defendant had actual notice of the condition in the drainage pipes and culverts that caused sediment damage. The Director of Public Works Department testified:
Q: Now, it's my understanding from your previous testimony in your deposition that you had conceded that there were issues of what you called wash in this area that we talked about[.] . . . I mean you used the word wash?
A: Yes. You know, there's always sediment or sand coming into those ditches. Yes.
Q: And they're coming in from various sources, but then once they're in your right-of-way, then the duty falls on the village to insure that that sand and sediment doesn't get down to the drainage system, correct? . . .
A: What they actually do if it builds up, we try to clean it out, yes, so it would not overflow the ditch line over the roadway.
The Assistant Director of the Public Works Department testified:
Q: Now, would you also agree . . . that that area, where the ditch is down in Lake Hills, has had  has a history of washes?
A: We've had some wash.
Q: And some of those washes include the wash of sand and sediment?
A: Yes.
Q: And there is some construction up on those areas that may create an issue in your right-of-way where there would be more sand than maybe some other right-of-way.
A: Yes, sir.
Q: But despite that, the Village of Pinehurst, to your knowledge, did not engage in any preventative measures to prevent the sand from getting ultimately down to drain 3 prior to the April event?
A: That's correct.
Q: And you have no records of planting any grass, matting, placing matting over the grass, or any rip rap in that area until you went to the pond and saw the sand?
A: That's correct.
We conclude that the cases cited by defendant do not foreclose the possibility of a negligence action against a municipality, simply because "defendant's acts or omissions [did not cause] sediment to be in the water[.]" Further, we conclude that the evidence presented in this case was sufficient to permit the jury to determine that defendant was negligent. The evidence showed that defendant had notice of large amounts of sediment accumulating in plaintiff's pond; that defendant had a duty to maintain the drains and keep them in good repair; and that defendant breached this duty by failing to take reasonable measures to prevent the sediment from accumulating in plaintiff's pond. This assignment of error is without merit.

IV: Jury Instructions
In its second argument, defendant contends that the trial court erred by denying defendant's requests for special jury instructions, pursuant to N.C. Gen. Stat. § 1A-1, Rule 51(b). We disagree.
"When charging the jury in a civil case, it is the duty of the trial court to explain the law and to apply it to the evidence on the substantial issues of the action." Griffis v. Lazarovich, 161 N.C. App. 434, 441, 588 S.E.2d 918, 923 (2003). "When a party appropriately tenders a written request for a special instruction which is correct in itself and supported by the evidence, the failure of the trial judge to give the instruction, at least in substance, constitutes reversible error." Stimpson Hosiery Mills v. Pam Trading Corporation, 98 N.C. App. 543, 551, 392 S.E.2d 128, 132 (1990) (quotation omitted). "The court is not required, however, to use the precise language of the tendered instruction so long as the substance of the request is included." Williams v. Randolph, 94 N.C. App. 413, 425, 380 S.E.2d 553, 561 (1989);see also Faeber v. E.C.T. Corp., 16 N.C. App. 429, 430, 192 S.E.2d 1, 2 (1972).
To determine whether the trial court committed reversible error here, we must first assess whether defendant's request for jury instructions was correct as a matter of law and supported by the evidence. In the instant case, defendant requested the following special jury instructions:
Special Jury Instruction No. 1:
Members of the jury, I instruct you that a town is responsible for the maintenance, upkeep and operation of storm drains and culverts constructed by a third party only when the storm drains and culverts have been accepted or controlled in some legal manner by the town. The fact that a culvert owned or controlled by a town is connected to a private line of drainage, under the circumstances involving no legal dedication by the private owner or control by the town, does not make the town liable for damages to private property caused by a break in the private line. A town does not adopt a private drainage line merely by cleaning and repairing it, or by constructing a drain, manhole, or intake which does not conduct into the drainage line any extra water.
In this case, Plaintiffs must prove, by the greater weight of the evidence, that their alleged injuries were proximately caused by a defect or failure of those portions of the storm drainage system which have been legally accepted or controlled by the Village of Pinehurst. The Plaintiffs must also prove that the defect or failure was due to negligence on the part of the Village. Unless the Plaintiffs prove both of these things, it is your duty to return a verdict in favor of the Village.
Primarily, we note that defendant misconstrued the holding in Hotels, Inc., which stated the following general rule:
[A] municipality becomes responsible for maintenance, and liable for injuries resulting from a want of due care in respect to upkeep, of drains and culverts constructed by third persons when, and only when, they are adopted as a part of its drainage system, or the municipality assumes control and management thereof.
Hotels, Inc. at 536, 151 S.E.2d at 37. In light of the general rule, defendant's proposed jury instruction, that "[a] town does
not adopt a private drainage line merely by cleaning and repairing it, or by constructing a drain, manhole, or intake which does not conduct into the drainage line any extra water[,]" is misleading and contrary to law. Further, the trial court instructed the jury to the following, which we conclude to be substantially the same as the legally accurate portions of defendant's special request: "the plaintiff must prove by the greater weight of the evidence the following things. First, that the drainage system or the pipes and culverts are a public way which the City of Pinehurst is responsible for maintaining." We conclude that the trial court did not err by failing to include defendant's special jury instruction number one.
Defendant next requested the following jury instruction:
Special Jury Instruction No. 2:
Members of the jury, among other things, you have been asked to determine whether the Village of Pinehurst breached a duty to the Plaintiff. I instruct you that, in making this determination, you must recognize that an owner or occupier of land has a duty only to control those conditions existing upon the premises which are in its possession or control. An owner or occupier of land generally has no duty to prevent or remedy defective or harmful conditions existing on the land which it does not possess or control.
In this case, the Plaintiffs must prove, by the greater weight of the evidence, that the sand and/or sediment deposited on the Plaintiff's premises originated on land in the possession or control of the Village of Pinehurst. If the Plaintiffs do not prove that the sand and/or sediment originated on land in the possession or control of the Village of Pinehurst, it is your duty to find in favor of the Village.
As discussed in a previous section of this opinion, the defendant's contention that "the sand and/or sediment deposited on the Plaintiff's premises [must have] originated on land in the possession or control of the Village of Pinehurst[,]" is not a legal requirement as to plaintiff's claim of negligence. Defendant's duty of care to maintain the culverts and drains located on its right-of-way was not contingent upon the source of sand and sediment, as defendant argues. Rather, defendant's negligence arose from its failure to maintain the drainage system, regardless of the source of sand. The trial court did not err by failing to include the foregoing instruction.
Defendant next requested the following jury instruction:
Special Jury Instruction No. 3:
Members of the jury, I instruct you that in surface water drainage cases, adjoining property owners or occupiers have certain rights and responsibilities with respect to surface water drainage. These rights are called "riparian rights." The owner of a property which is "upstream," so to speak, is referred to as an "upper riparian owner," while the adjoining downstream property owner is called a "lower riparian owner."
In general, the owner or occupier of a property is entitled to maintain and continue the natural flow of a watercourse running through or along his property in its accustomed channel. Provided that an upper riparian owner does not take any action which unreasonably diminishes the quality or quantity of the water flowing through his property, an upper riparian owner is not liable to any lower riparian owners for any downstream injury or damage which the water flowing through the upper riparian owner's property may cause to the property owned by a lower riparian owner.
In this case, because surface water flows from the Village of Pinehurst's right-of-way to the Lakeview property, the Village is an "upper riparian owner" and the Plaintiffs are "lower riparian owners." As a result, the Plaintiffs must prove, by the greater weight of the evidence, that the Village unreasonably altered and impaired the quality and/or quantity of the surface water which flowed unto [sic] Plaintiffs' property. In other words, the Plaintiffs must prove that the Village's property was the source of the soil or sediment runoff. It is not sufficient to prove that the Village merely allowed soil or sediment-laden surface water to run across its property. If the Plaintiffs do not prove that the Village's property was the source of the soil or sediment runoff, it is your duty to find in favor of the Village.
As this instruction deals solely with riparian rights, and since "[t]here is no indication in the Pendergrast opinion that the court meant to apply the reasonable use rule to surface water drainage problems not arising under a nuisance theory[,]" Woodward at 338, 315 S.E.2d at 338-39, the trial court did not err by failing to give the foregoing instruction.
Defendant next requested the following jury instruction:
Special Jury Instruction No. 4:
Members of the jury, I instruct you that before you may award damages to the Plaintiffs, the Plaintiffs must establish that they are the owners of the property which they claim was damaged. When an easement or right-of-way is damaged, the owner of the easement or right-of-way, and not the owner of the servient tenement, is the only party entitled to recover damages.
In this case, you may not award damages to the Plaintiffs for any injury or repairs performed to any easement, right-of-way, or other property owned by the Village.
Defendant specifically contends that "if an easement or right-of-way is damaged, the owner of the easement, rather than the servient tenement, is the party entitled to recover for the damage." Defendant further contends that "[p]laintiff could not be awarded any damages for injury or repairs to property Plaintiff did not own." Defendant relies on Hefner v. Stafford, 64 N.C. App. 707, 308 S.E.2d 93 (1983), and Falkson v. Clayton Land Corp., 174 N.C. App. 616, 621 S.E.2d 215 (2005). In Stafford, the plaintiffs sought compensation for trees removed from property they did not own. In Flakson, the owner of an easement sought damages from the servient tenant for impermissibly interfering with the owner's use of the easement. We conclude that the decisions cited by defendant are inapplicable to the instant case, and further, that defendant's argument misconstrues the law as applied to the facts of this case. Unlike Stafford, it was not disputed at trial that plaintiff owned the damaged pond into which sand from defendant's culverts and drainage pipes emptied. Further, unlike the plaintiff in Flakson, plaintiff did not impermissibly interfere with defendant's right-of-way; rather, the jury determined that plaintiff's pond was damaged by defendant's negligent maintenance of defendant's right-of-way. We conclude that defendant's argument that plaintiff could not recover damages from defendant based on the foregoing cases is erroneous as a matter of law. Therefore, the trial court did not err by failing to instruct the jury as the defendant requested in the special jury instruction number four. After a careful review of the charge in the instant case, we conclude that the court properly instructed the jury with respect to the law applicable to the substantive features of the case, and properly applied the law to the evidence. We do not agree with defendant that the judge should have given instructions on riparian rights and reasonable use, which would have only tended to confuse and mislead the jury. The issue before the jury was the negligence of a municipality in the maintenance of its right-of-way, not nuisance or trespass attributable to a private, adjacent landowner. The trial court did not err by failing to give the requested instructions. This assignment of error is without merit.

V: Damages
In its third argument, defendant contends that the trial court erred by awarding plaintiff repair cost damages rather than diminution of value damages. We disagree.
"[F]or negligent damage to real property, the general rule is that where the injury is completed . . . the measure of damages ' is the difference between the market value of the property before and after the injury.'" Huberth v. Holly, 120 N.C. App. 348, 353, 462 S.E.2d 239, 243 (1995) (quotation omitted). However, "[w]hile the difference in market value before and after injury is one permissible measure of damages, it is by no means the only one. Damages based on cost of repair are equally acceptable." Plow v. Bug Man Exterminators, Inc., 57 N.C. App. 159, 162-63, 290 S.E.2d 787, 789 (1982). In Huff v. Thornton, 23 N.C. App. 388, 209 S.E.2d 401 (1974), this Court stated: [I]n cases where the injury [to real property] is completed or by a single act becomes a fait accompli, and which do not involve a continuing wrong or intermittent or recurring damages, the correct rule for the measure of damages is the difference between the market value of the property before and after the injury.
Id. at 393, 209 S.E.2d at 405 (quotation omitted). However, when the damage complained of is "impermanent[,]" "'various other rules are applied, such as . . . reasonable costs of replacement or repair.'" Casado v. Melas Corp., 69 N.C. App. 630, 636, 318 S.E.2d 247, 250 (1984).
In Casado, 69 N.C. App. at 636-38, 318 S.E.2d at 250-51, this Court determined that the proper measure of damages was reasonable cost of replacement and repair, where the defendant's negligence in grading and paving a road caused the formation of a delta in the plaintiff's pond. The Court stated that "[w]hile the 'Delta' created by the runoff may well be 'a permanent condition,' the fact that it is continuing to accumulate makes it an impermanent and continuing injury for the purpose of measuring damages." Id. at 636, 318 S.E.2d at 250 (quotation omitted). The Court held that "diminution in market value . . . is not appropriate where, as here, the damage complained of is ' impermanent.'" Id. at 637, 318 S.E.2d at 251. Rather, "reasonable costs of replacement or repair" is the appropriate measure of damages. Id.; see also Phillips v. Chesson, 231 N.C. 566, 58 S.E.2d 343 (1950) (holding that the trial court erred by instructing the jury to compute damages awarded on the basis of diminution in value of plaintiff's property when the defendant diverted the natural flow of surface water, causing it to flow onto plaintiff's property, resulting in the accumulation of clay and mud on plaintiff's land); Sutherland v. Hickory Nut Co., 23 N.C. App. 434, 209 S.E.2d 301 (1974) (holding that damages to plaintiff's property by water and sediment resulting from defendant's upstream land disturbance was impermanent as a matter of law by trial court).
The facts of the instant case are similar to Casado, Phillips, and Sutherland. Plaintiffs pond continued to collect sediment and sand from defendant's culverts and drainage pipes, but the deposits of sand were removable. We agree with plaintiff that "[o]nce the pond and pipe were restored . . . there would be no diminution of value." The trial court thus instructed the jury that "[t]he plaintiff's actual property damages are the amount reasonably needed to repair the damage to the property." We conclude that the damages were "of an ' impermanent' nature," such that the the trial court did not err in instructing the jury that the proper measure of damages was "the reasonable costs of replacement or repair."Casado at 636, 318 S.E.2d at 251.
Defendant specifically requested the following jury instruction:
Special Jury Instruction No. 5:
Members of the jury, I instruct you that the proper measure of damages for negligent damage to real property is the "diminution of value." This is the difference between the market value of the property before and after the injury. In determining this amount, you may consider the cost of any necessary repairs. However, your award, if any, should be the diminution of value because this is the proper measure of damages.
However, we conclude, based upon Casado, Phillips, and Sutherland, that the trial court did not err by failing to instruct the jury as defendant requested in the special jury instruction number five. This assignment of error is without merit.
Defendant has failed to argue its remaining assignments of error in its brief, and they are deemed abandoned. N.C. R. App. 28(b)(6) (2007).
For the foregoing reasons, we find no error.
NO ERROR.
Judge BRYANT concurs.
Judge LEVINSON concurred prior to 7 July 2007.